George Harvey JAMES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17069.

United States Court of Appeals Ninth Circuit.

Sept. 21, 1962.

Bancroft, Avery & McAlister, and Alan D. Bonapart, San Francisco, Cal., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Alec A. Pandaleon, and Earl Silbert, Attys., Dept. of Justice, Washington, D. C., and John W. Bonner, U. S. Atty., Reno, Nev., for appellee.

Before HAMLIN and BROWNING, Circuit Judges, and JAMESON, District Judge.

BROWNING, Circuit Judge.

Appellant is a traveling salesman. He sells clothing to two hundred accounts in nine western states on a commission basis for six manufacturers. In computing his 1953 personal income tax he deducted all money spent for hotel rooms, meals, and tips while away from Reno, Nevada. He contended that these were "traveling expenses (including the entire amount expended for meals and lodging) while away from home in pursuit of a trade or business," which are made deductible by Section 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A) as "ordinary and necessary" business expenses.

The Commissioner disallowed the deduction on the ground that taxpayer "failed to show that these expenses were incurred while away from home * *." Taxpayer paid the deficiency and sued to recover. The sole issue submitted to the District Court was whether taxpayer "had a home in the City of Reno, County of Washoe, State of Nevada, during the taxable year 1953." [1]

Briefly summarized, taxpayer had the following contacts with Reno during 1953.[2] He called upon a dozen accounts in Reno as he did upon similar accounts in other communities in his territory. During the year he spent approximately thirty days in Reno, which was about the same as the time spent in other cities of comparable size in his territory. While in Reno he stayed at a hotel or motel, and took his meals about town. His relationship with Reno differed from that with other cities in his territory in that he there maintained a Post Office box and bank account, dealt with a stockbroker, purchased his automobile and insurance, filed his income tax return, and stored certain personal belongings. In Reno taxpayer "rested, took care of his mail, his banking, insurance, cars and other things, which he did not do in the other communities in which he stopped." He regarded Reno as his "headquarters" for these purposes.

The District Court concluded that taxpayer had "failed to sustain his burden of proof that he had or maintained a home in Reno, Nevada during the taxable year 1953," and found that in fact taxpayer "was constantly in a travel status and his home was wherever he happened to be." The Court held that taxpayer's expenses for meals and lodging were not incurred "while away from home" within the meaning of Section 23 (a) (1) (A) and therefore could not be deducted in their entirety.

■ Interpretation of the pertinent language of Section 23(a) (1) (A) presents two problems. First, it is not self-evident that a taxpayer must have a home to be entitled to deduct living expenses under the Section. The phrase "away from home" does not necessarily

1. James v. United States, 176 F.Supp. 270, 271 (D.Nev.1959).

2. Some years prior to 1953, taxpayer had maintained a permanent home in Reno with his wife, from whom he was later divorced.

exclude the homeless traveler and include only those who are temporarily away from a fixed and permanent abode. Second, assuming that taxpayer must have a "home" to be "away from," there is a wide area of possible disagreement as to the nature and extent of the contacts which a taxpayer must have with a particular location to identify it as his "home" within the meaning of the section.[3]

The provision of Section 23(a) (1) (A) allowing deduction as ordinary and necessary business expenses of "the entire amount" spent for meals and lodging "while away from home in the pursuit of a trade or business" involved a practical legislative compromise of two basic purposes. On the one hand, the Internal Revenue Code reflects a congressional purpose to permit deduction from gross income of ordinary and necessary business expenses. On the other hand, it reflects a purpose to tax income spent by individuals for their ordinary costs of living.[4]

But money spent for food and lodging on a business trip is normally in part business expense and in part personal living expense. When we are required to travel for business purposes, the cost of our food and shelter is increased:

continuing costs incurred at a permanent place of abode are duplicated, and we are compelled, in addition, to pay higher prices for our food and shelter than we would pay if not traveling. This increased cost is clearly attributable to the exigencies of business. On the other hand, since we must eat and sleep whether or not we are traveling, that portion of the cost of food and lodging while on business travel which would have been incurred even at home is actually a personal living expense.

It would be difficult for a taxpayer to show how much the actual cost of his food and lodging exceeded what the cost would have been had he not been traveling away from home on business. In adopting what is now Section 23(a) (1) (A), Congress rejected earlier efforts of the Treasury Department to impose that onerous burden upon the taxpayer.[5] This Section does not authorize deduction only of expenditures attributable to the business purpose, leaving those attributable to personal living expenses subject to tax. If deductible at all, "the entire amount expended for meals and lodging" is deductible.

Thus, out of practical necessity, Congress freed from taxation income spent on personal living expenses while on

---

3. Taxpayers have been held to have a "home" on the basis of less substantial contacts with a particular place of abode than appellant had with Reno; and taxpayers with more or equally substantial contacts with a fixed residence have been treated as homeless. Compare Charles G. Gustafson, 3 T.C. 998 (1944), and Simeon J. Smith, 2 CCH Tax Ct.Mem. 837 (1943), with Fisher v. Commissioner, 230 F.2d 79 (7th Cir. 1956), affirming 23 T.C. 218 (1954); Charles E. Duncan, 17 B.T.A. 1088 (1929), aff'd 47 F.2d 1082 (2d Cir. 1931), and Lester E. Wood, 17 CCH Tax Ct.Mem. 976 (1958). See generally 19 U.Chi.L.Rev. 534 (1952). There is also a dispute as to whether "home" in this context refers to place of residence or principal place of employment. Although the result would be the same in the present case under either definition, this Court is committed to the first. Wright v. Hartsell, (9th Cir.), 305 F.2d 221. See generally, 17 Tax

L.Rev. 261, 266 (1962); 1962 Wis.L.Rev. 156; 39 Texas L.Rev. 922, 927 (1961); 43 Va.L.Rev. 59 (1957).

4. Compare Int.Rev.Code of 1939, § 23(a) (1) (A) with Int.Rev.Code of 1939, § 24 (a) (1). As the District Court said, "Congress did not exempt the usual living expenses of the taxpayer. We all share that burden equally." James v. United States, 176 F.Supp. 270, 272 (D.Nev. 1959).

5. The Treasury Department had limited the deductions to expenditures for meals and lodging "in excess of any expenditures ordinarily required for such purposes at home." Later, Congress expressly extended the deduction to "the entire amount expended." The administrative and legislative materials are cited in Williams v. Patterson, 286 F.2d 333, 334 (5th Cir. 1961), 17 Tax L.Rev. 261, 262-63 (1962), and 19 U.Chi.L.Rev. 534, 541 (1952).

business trips. This discriminates against taxpayers whose business does not require travel, and who therefore pay tax upon all of the income which they devote to their personal living expenses. The discrimination may be substantial.[6]

It is not surprising, therefore, that Congress did not allow the deduction of this total amalgam of personal living expense and business expense in every situation involving business travel. The total cost of meals and lodging was made deductible only when the travel is also "away from home." The reason for the selection by Congress of this particular limitation seems fairly clear, and suggests the meaning intended by the phrase as a whole and particularly by the word "home."

As we have suggested, expenditures for meals and lodging can be said to arise from business necessity rather than personal need only to the extent that the taxpayer must pay more for these items as a result of travel for business purposes. And this increased burden can arise either from duplication or from inherently higher cost.

But there is no duplication unless the taxpayer maintains an abode at which he incurs living expenses in addition to those which he incurs while traveling. And when duplication does exist, it constitutes a valid reason for attributing living expenses to business

necessity only to the extent of the duplication. It follows that the Section 23 (a) (1) (A) deduction of *total* expenditures for meals and lodging should be held to apply (so far as duplication is the justification) only when the taxpayer has a "home," the maintenance of which involves substantial continuing expenses which will be duplicated by the expenditures which the taxpayer must make when required to travel elsewhere for business purposes.

The second justification for treating the cost of meals and lodging on business trips as business expense is the assumption that food and shelter cost more while traveling. This justification also supports a reading of the Section as requiring maintenance of a substantial permanent abode at which taxpayer could live at a lesser expense if not required to travel. If a taxpayer has no such home, and obtains his food and shelter at public restaurants and lodgings even if not traveling, the increase in the cost of these items attributable to travel is at least substantially less.[7]

For these reasons it has generally been held that the taxpayer cannot be "away from home" within the meaning of Section 23(a) (1) (A) unless he has a "home"; or the same result is reached by holding that the "home" of a taxpayer without a fixed and permanent abode is located wherever the taxpayer happens to be.[8] And we think the better rea-

6. A salesman may be allowed to deduct the total amount spent for meals and lodging during all but a few days of the year. See H. H. Roberts, 9 B.T.A. 376 (1927).

7. Moreover, the existence of a "home" sufficiently substantial to make it reasonable to assume that taxpayer would be there by personal preference if not compelled by business to be away provides the only practical guaranty that the travel itself will be undertaken (and hence that on-the-road living expenses will be incurred) only when required by the exigencies of business. A taxpayer with only a nominal "home" and little incentive to return may remain in a tax-deductible travel status beyond the necessities of the job.

8. See Fisher v. Commissioner, 230 F.2d 79 (7th Cir. 1956), affirming 23 T.C. 218 (1954); Max W. Tugel, CCH Tax Ct.Mem.1961—137; Lester E. Wood, 17 CCH Tax Ct.Mem. 978 (1958); Robert J. Burns, 15 CCH Tax Ct.Mem. 487 (1956); Charles E. Duncan, 17 B.T.A. 1088, 1090 (1929), aff'd 47 F.2d 1082 (2d Cir. 1931); Herman Martin, 44 B.T.A. 185, 187 (1941). See also I.T. 1490, I–2 Cum.Bull. 89 (1922); Rev.Rul. 60–16, 1960–1 Cum.Bull 58, 62; 4 Mertens, Law of Federal Income Taxation § 25.93 at 272–73; 17 Tax L.Rev. 261, 274–75 (1962). This conclusion finds some support in the legislative history. See 19 U.Chi.L.Rev. 539, 541 (1952).

soned authority holds that a taxpayer has a "home" for this purpose only when it appears that he has incurred substantial continuing living expenses at a permanent place of residence.[9]

██ Measured by these standards, the District Court properly held that the taxpayer in the present case was not entitled to deduct the entire cost of his meals and lodging while away from Reno in 1953. His contacts with Reno during that year were not such as to give him a "home" there for any purpose relevant to Section 23(a) (1) (A).

There was nothing to indicate that the cost of taxpayer's meals and lodging while traveling duplicated any living expenses in Reno which continued during his absence. There was nothing to indicate that his meals and lodging cost more away from Reno than in that city; he slept in hotels and ate in restaurants whether in Reno or elsewhere. To characterize his expenditures for meals and lodging in Reno as personal living expense, and his expenditures for meals and lodging elsewhere as travel expense incurred in the pursuit of business, would be essentially arbitrary.[10]

██ While we hold that appellant could not deduct the entire cost of his food and lodging away from Reno as travel expense, he could, of course, have deducted as ordinary and necessary business expenses that *portion* of the cost of his meals and lodging, in Reno or elsewhere, which was in fact attributable to the exigencies of business.[11] But the burden of allocating these costs between personal and business expense rested upon him,[12] and he made no effort to discharge it.

Realistically, as we have noted, the burden is a difficult one to carry,[13] and the resulting situation is no doubt inequitable. A taxpayer may be unable to deduct costs that are unquestionably ordinary and necessary business expenses simply because he cannot, as a practical matter, separate them by proof from personal living expenses. Perhaps the "Cohan" doctrine might be usefully applied in this area.[14] Legislative relief has also been suggested.[15] But in any event, we are satisfied that it would not be an appropriate solution to judicially extend to essentially itinerant persons the deduction of *total* personal living expenses made available by Section 23(a) (1) (A) for the benefit of those who maintain a substantial fixed abode.

Affirmed.

9. Charles E. Duncan, 17 B.T.A. 1088, 1091–92 (1929), aff'd 47 F.2d 1082 (2d Cir. 1931); Chester D. Griesmer, 10 B.T.A. 386, 389 (1928). See also Harvey v. Commissioner, 283 F.2d 491, 495 (9th Cir. 1960); 19 U.Chi.L.Rev. 534, 540–41, 545–46 (1952); 39 Texas L.Rev. 922, 925 (1961); 17 Tax L.Rev. 261, 263 (1962). Contra, Charles G. Gustafson, 3 T.C. 998, 1000 (1944); Simeon J. Smith, 2 CCH Tax Ct.Mem. 837 (1943); Howard Murphy, 1 CCH Tax Ct.Mem. 757 (1943).

10. Appellant's business required travel, but he had no such relationship with Reno as would justify the assumption that his absence from that city at any given time was due to the requirements of business rather than purely personal preference. He had little incentive to return to Reno. As he testified, on weekends "for the most part I stayed in the town in which I happened to be."

11. Cf. Richard A. Sutter, 21 T.C. 170, 173 (1953); 4 Mertens, supra note 8, at 264–65, 272–73.

12. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943). See also Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416 (1940).

13. See, e. g., Commissioner v. Doak, 234 F.2d 704 (4th Cir. 1956); Richard A. Sutter, 21 T.C. 170 (1953).

14. Cohan v. Commissioner, 39 F.2d 540, 543–44 (2d Cir. 1930); 4 Mertens, supra note 8, § 25.04.

15. It has been suggested that an appropriate legislative adjustment might be to amend the Code to allow deduction of an arbitrary percentage of living expenses incurred while traveling on business. 19 U.Chi.L.Rev. 534, 546 (1952). See Howard Murphy, 1 CCH Tax Ct.Mem. 757 (1943).