920

CHARLES W. RAMBO, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 8691–74.     Filed March 13, 1978.

Charles W. Rambo, pro se.
*David W. Otto*, for the respondent.

RAUM, *Judge:* The Commissioner determined the following
deficiencies in petitioner's individual Federal income tax:

| Year | Deficiency |
|------|------------|
| 1971 | $1,073.00 |
| 1972 | 1,788.84 |

Both sides have made concessions, and the only issue for decision
is whether petitioner is entitled to deductions in each of the 2
years for expenses for meals and lodging which he incurred
while allegedly away from home in pursuit of his trade or
business. See section 162(a)(2), I.R.C. 1954.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of
facts and accompanying exhibits are incorporated herein by this
reference.

Petitioner Charles W. Rambo resided in Branson, Mo., at the
time of the filing of the petition herein. Petitioner was single

during the years 1971 and 1972 and timely filed his individual Federal income tax returns for those 2 years.

Petitioner was born in Montana in 1927. At some time before 1952 he married and had two children. In the early 1950's he lived with his wife and children in Billings, Mont., and worked in Billings as an accountant first for the Northern Pacific Oil Co. and later for the Colorado Fuel & Iron Co.

In 1952 or 1953, petitioner purchased a cabin located in Beehive, Mont., approximately four miles from Nye, Mont., and 65 miles from Billings. He and his family acquired the property in order to have a place to hunt and fish and get away into the mountains. They paid about $1,500 for the property, and spent an additional $3,000 in making various improvements. When purchased, the cabin was divided into two rooms by a partition. Petitioner removed the partition and added electricity. Later in the 1950's, he added a bedroom and a kitchen. After these additions, the cabin consisted of a 12- by 20-foot living room, a 12- by 12-foot bedroom, and a 12- by 16-foot kitchen. It had oil heat, fireplaces, and electricity, but did not have running water or indoor toilet facilities. It has never had a telephone. The property was located on the Stillwater River near national forest lands and Yellowstone National Park. The road giving access to it was kept open throughout the year. Postal service was handled through the nearby town of Nye, Mont. There were neighbors, the nearest of whom was located some 3 city blocks away. Petitioner and his family used the cabin primarily on weekends and during vacations.

Petitioner was divorced in 1957, at which time he moved out of his house in Billings and took up residence in the cabin in Beehive. He continued to work in Billings, usually spending 2 nights a week in Billings and commuting to the cabin in Beehive the rest of the week. For at least part of this time he maintained an apartment in Billings.

In July 1961, petitioner was hired by the American Bridge Division of United States Steel Corp. (American Bridge), serving initially as a clerk and thereafter as an accountant and timekeeper.[1] His first assignment was at a jobsite in Montana to which he commuted from the Beehive cabin, but that assign-

---

[1]The business headquarters of American Bridge is Pittsburgh, Pa., but job assignments are made in one of three district offices located in Pittsburgh, Chicago, and somewhere in the Western United States outside the State of Montana. American Bridge has no office in or near Nye, Mont.

ment ended in 1962. Since then, American Bridge has had no jobs in Montana, and petitioner has been assigned to a series of temporary jobs with American Bridge in other States and in Puerto Rico. American Bridge pays moving expenses and allows 5 or 6 days' moving time in connection with each change of assignment. During 1971 and 1972, petitioner had the following assignments:

| Location | Dates of assignment |
|---|---|
| Orlando, Fla. | Jan. 1971—July 1971 |
| San Juan and Poncie, Puerto Rico | Aug. 1971—Sept. 1972 |
| Provo, Utah | Sept. 1972—Dec. 1972 |

In Orlando, petitioner lived in a rented mobile home, in Puerto Rico in a rented one-bedroom apartment, and in Provo in a rented furnished apartment for which he paid about $120-per-month rent. He owned certain items of furniture and household appliances which he took with him to the various temporary residences. It was his practice to open checking and savings accounts in each new location to which he was transferred, and to register his car there when required by law to do so.

During the years in which petitioner worked for American Bridge, it was his custom to spend his vacation in the cabin in Beehive, Mont. In 1971, he spent approximately 2 weeks in June and 3 weeks in December at the cabin, and in 1972 1 week in September and 3 weeks in December. He spent no vacation time in either year anywhere except the cabin in Beehive. While he was absent from the cabin it remained vacant, but was watched over by a neighbor.

As of 1971 and 1972, petitioner's property in Beehive, Mont., was worth approximately $4,000 to $5,000. It was furnished and contained normal appliances and other household goods, and in addition petitioner kept about $3,000 to $4,000 worth of antiques there. In each of the 2 years, petitioner expended $45 for property taxes and $75 for utilities.

In addition to the cabin in Beehive, petitioner had other connections with Montana during the years 1971 and 1972. His mother and brother lived in Livingston, Mont., about 120 miles from Beehive. (His children lived in Pittsburgh and New York.) He maintained his voting registration in Montana, either in Beehive or in Billings, and paid Montana State income taxes on

his entire income. He had a checking account in Absarokee, Mont., some 16 miles from Nye, and received mail through the post offices in both Nye and Park City, Mont. He owned one and possibly two pieces of rental property in Park City, Mont., from which he received rent of $351 in 1971 and $450 in 1972. He intended to retire to his cabin in Beehive.

The parties have stipulated that each of petitioner's three American Bridge assignments during 1971 and 1972 was "temporary" rather than "indefinite" or "indeterminate." In connection with those three job assignments petitioner incurred expenses for food and lodging totaling $3,440 in 1971 and $4,260 in 1972, and he deducted those amounts on his returns for 1971 and 1972 as expenses incurred while away from home in pursuit of a trade or business. See sec. 162(a)(2), I.R.C. 1954. The Commissioner disallowed the claimed deductions. The Commissioner also made certain other adjustments which are no longer in issue.

## OPINION

Petitioner Charles Rambo was employed during 1971 and 1972 as an accountant and timekeeper for the American Bridge Division of United States Steel Corp. He had originally been hired by American Bridge in 1961 to work on a project in the vicinity of Beehive and Nye, Mont., and had commuted to work from his cabin in Beehive. Since 1962, however, the company had had no projects in Montana and petitioner had been transferred from one temporary project to another in various other States and in Puerto Rico. Nonetheless, petitioner continued to maintain his cabin in Beehive and returned to it for all his vacations and whenever his duties with American Bridge permitted. He had family ties in Montana, paid income and property taxes to Montana, and actually spent 4 to 6 weeks at his Montana cabin in each of the 2 years here at issue. Petitioner claims deductions for certain expenses as expenses incurred for food and lodging while away from home in the pursuit of his trade or business. See sec. 162(a)(2), I.R.C. 1954. The Commissioner has conceded that petitioner spent amounts claimed on food and lodging away from Beehive and Nye, Mont., and that petitioner's three jobs during 1971–1972 were "temporary" rather than "indefinite" or "indeterminate." The only question presented, therefore, is the purely factual one of whether

petitioner's cabin in Beehive, Mont., was his "home" within the meaning of section 162(a)(2), such that petitioner was "away from home" while at the American Bridge work sites in Orlando, Fla., San Juan and Poncie, P. R., and Provo, Utah.

The deduction provided by section 162(a)(2) was designed to ease the burden on taxpayers who, because of their jobs, are required to incur extra expenses for meals and lodging above and beyond the expense of maintaining their family homes; it reflects congressional concern both for unavoidable duplication of expenses and for the fact that meals and lodging are more costly for a person who must travel than they are for a person who can maintain a year-round home. *James v. United States*, 308 F.2d 204, 206 (9th Cir.); *Jones v. Commissioner*, 54 T.C. 734, 740, affirmed 444 F.2d 508 (5th Cir.); *Tucker v. Commissioner*, 55 T.C. 783, 786; *Michaels v. Commissioner*, 53 T.C. 269, 274–275; *Kroll v. Commissioner*, 49 T.C. 557, 562. However, as the Court of Appeals for the Ninth Circuit noted in *James v. United States*, *supra* at 206:

> money spent for food and lodging on a business trip is normally in part business expense and in part personal living expense [nondeductible under section 262]. When we are required to travel for business purposes, the cost of our food and shelter is increased: continuing costs incurred at a permanent place of abode are duplicated, and we are compelled, in addition, to pay higher prices for our food and shelter than we would pay if not traveling. This increased cost is clearly attributable to the exigencies of business. On the other hand, since we must eat and sleep whether or not we are traveling, that portion of the cost of food and lodging while on business travel which would have been incurred even at home is actually a personal living expense.

Given the administrative difficulty inherent in distinguishing the personal from the business elements, however, Congress chose to allow deduction of *all* expenses for meals and lodging, but to limit the deduction to those taxpayers who were "away from home." *James v. United States*, *supra* at 207.

The Commissioner has taken the position that petitioner was an itinerant worker who carried his "tax home" on his back from worksite to worksite. See *James v. United States*, *supra*, at 204; *Brandl v. Commissioner*, 513 F.2d 697 (6th Cir.); *Scotten v. Commissioner*, 391 F.2d 274 (5th Cir.), affirming a Memorandum Opinion of this Court; *Bochner v. Commissioner*, 67 T.C. 824; *Wirth v. Commissioner*, 61 T.C. 855; cf. *Rosenspan v. United States*, 438 F.2d 905 (2d Cir.). The issue is a close one, and many of the factual considerations advanced by the Government

support its position. Nonetheless, on balance, we think the petitioner has met his burden of persuading us that the cabin in Beehive was his "home" within the statutory requirements. From the time of his divorce in 1957 until he was transferred from Montana in 1962, petitioner lived in the Beehive cabin and commuted to work either in Billings or elsewhere in Montana. See *Dean v. Commissioner*, 54 T.C. 663, 667; *Kroll v. Commissioner*, 49 T.C. at 564–565. From 1962 on he worked at a series of temporary jobs, always returning to Montana when possible. It appears from the record that petitioner's cabin in Beehive was simple, and that it was located in an area well suited for hunting, fishing, and other recreational activities. We think, however, that the details of petitioner's lifestyle and his relatively simple accommodations ought not to control the deductibility of expenses incurred at his various worksites. See *Sapson v. Commissioner*, 49 T.C. 636, 644; *Boyer v. Commissioner*, T.C. Memo. 1977–331. There are other factual materials pro and con which we have taken into account in reaching our factual conclusion, but it would serve no useful purpose to detail them here. We conclude, on the basis of the record as a whole, that Beehive, Mont., was petitioner's "home" within the meaning of section 162(a)(2) throughout the years 1971 and 1972.

Because of concessions on both sides,

*Decision will be entered under Rule 155.*