ROBERT P. KALMUS, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kalmus v. Commissioner
Docket No. 3795-78.
United States Tax Court
T.C. Memo 1980-44; 1980 Tax Ct. Memo LEXIS 537; 39 T.C.M. (CCH) 1040; T.C.M. (RIA) 80044; February 26, 1980, Filed Stuart F. Lewin, for the petitioner. Stuart D. Gibson, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a $1,116 deficiency in petitioner's 1974 Federal income taxes. The sole issue for decision is whether petitioner is entitled to deduct under section 162 [1] his unreimbursed expenses for meals and lodging incurred while traveling on behalf of his employer. Specifically, we must decide: *538 (1) Whether petitioner had a "tax home" during the year in question such that he is entitled to deduct under section 162(a)(2) his unreimbursed expenses during that year for meals and lodging while "away from home"; or (2) If petitioner did not have a "tax home" during that year, whether he is nevertheless entitled to deduct such costs as ordinary and necessary business expenses under section 162(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Robert P. Kalmus (hereinafter the petitioner) was a legal resident of Rapid City, South Dakota, at the time the petition was filed in this case. He timely filed his 1974 Federal income tax return with the Internal Revenue Service Center at Fresno, California. Petitioner is a native-born Californian. For some time prior to late 1970 or early 1971, petitioner resided in Los Angeles, California. However, around that time, petitioner was unemployed and thus decided to move to San Diego, even though he had never lived there before. Upon his arrival in San Diego, petitioner moved in with his cousin, Wesley D. Andrews, who owned a house in San Diego. When he first started living with his cousin, *539 petitioner agreed to pay him rent of $50 per month or to perform odd jobs around the house in lieu of such cash rental payments.
Except for two or three months during 1972, petitioner remained unemployed while living with his cousin until January of 1973. Throughout this period, petitioner's resources were limited to unemployment compensation and $2,500 in loans from his cousin, which consisted of $1,200 for 24 months of rent and $1,300 for various living expenses. With respect to petitioner's agreement to pay his cousin rent, it appears that petitioner painted his cousin's house during 1971 in lieu of an unspecified amount of rent. However, none of the $2,500 in loans from petitioner's cousin was repaid before the calendar year 1974. In January of 1973, petitioner obtained employment as an outside sales representative with Chromalloy Photographic Industries of St. Louis, Missouri. At the time that petitioner took this job, his employer told him that he would be doing a "good amount" of traveling. While traveling on behalf of Chromalloy, petitioner lived in motels and ate in restaurants. Petitioner traveled to Chromalloy's home office in St. Louis on business only about three *540 times a year. For each day that petitioner worked for Chromalloy, including days when he worked in St. Louis, he received from his employer a $15 per diem allowance plus a varying amount per mile for gasoline. Between February and May of 1973, petitioner was located in the eastern United States by Chromalloy for training purposes. Beginning in May of 1973, petitioner was assigned to Chromalloy's western sales region covering California, Arizona, Oregon, Washington, and Montana. From May through December of 1973, petitioner had some work assignments in the San Diego area during which he stayed with his cousin. During the 1974 taxable year here in question, petitioner was in San Diego, off and on, for 2-1/2 to 3 months. Petitioner devoted about two to three weeks of this period to repainting his cousin's house. Moreover, as was the case during all of the years that he worked for Chromalloy, petitioner kept all of his personal belongings and furnishings at his cousin's house; stayed with his cousin when he was in the San Diego area; and listed his cousin's address on his driver's license, voter's registration, and tax returns. In March of 1975, petitioner moved to Rapid City, *541 South Dakota. As of March 27, 1979, the date of trial in this case, petitioner still maintained personal belongings and furnishings at his cousin's home in San Diego even though he no longer paid his cousin any rent for the privilege. When the petitioner first accepted the job with Chromalloy, he told his cousin that he would pay rent of whatever he could afford to pay. If the petitioner could not afford to pay rent in a given month, he did not pay any rent for that month. Even so, petitioner eventually repaid the full $2,500 owed to his cousin. [2] The sum of $500 was paid in 1974 and the balance in later years. *542 During 1974, petitioner claims repayment of $500 of the $2,500 sum loaned to him by his cousin with $250 in cash and by two or three weeks of work repainting his cousin's home. An unspecified portion of this amount repaid in 1974 had been used by the petitioner to purchase clothing and gasoline. In any event, however, petitioner failed to specify how much of this amount represented the payment of 1974 rents. On his 1974 Federal income tax return, petitioner deducted expenses for meals, lodging, and travel in the total amount of $5,288 and failed to include in income his employer's reimbursements for other such expenses in the amount of $3,150. In his statutory notice, the respondent determined that petitioner's reimbursements from Chromalloy for his travel expenses were includable in his income and that petitioner was not entitled to deduct the $5,288 of his travel expenses since he was not "away from home" during 1974. The basis of respondent's determination was that petitioner was an itinerant worker and did not have a tax home during 1974 as required by section 162(a)(2). OPINION
Since the petitioner has conceded that he must include in his income for 1974 the *543 $3,150 of travel expenses for which he was reimbursed by Chromalloy, the only issue which we must decide is whether petitioner is entitled to deduct $5,288 of unreimbursed expenses for meals and lodging incurred while traveling on behalf of his employer. Petitioner contends that he maintained San Diego as his tax home and that he is entitled to deduct under section 162(a)(2) his unreimbursed travel expenses away from that home during 1974. In the event that the Court finds that he did not have a tax home to be away from during the year in question, petitioner argues that he is nevertheless entitled to deduct under section 162(a) an unspecified portion of such travel costs as ordinary and necessary business expenses. Respondent contends that the petitioner was an itinerant worker and therefore had no permanent tax home. Accordingly, respondent asserts that the petitioner was never away from home and that his traveling expenses are therefore not deductible.
Section 162 [3] allows a deduction for ordinary and necessary traveling expenses (including amounts expended for meals and lodging) incurred by a taxpayer while away from home in the pursuit of a trade or business. This provision *544 is an exception to the general rule of section 262 which states that personal expenses are not deductible. In order to deduct his unreimbursed expenses for meals and lodging, the petitioner must establish: (1) that his expenses were ordinary and necessary; (2) that his expenses were incurred while he was "away from home"; and (3) that he incurred the expenses in the pursuit of his business. Commissioner v. Flowers,326 U.S. 465, 470 (1946); Bochner v. Commissioner,67 T.C. 824, 827 (1977); Hicks v. Commissioner,47 T.C. 71, 72-73 (1966). Inherent in the three tests set forth in Flowers is the requirement that a taxpayer have a "home" from which he can be away. A taxpayer will be considered *545 to have a "tax home" under section 162(a)(2) only when he has incurred substantial and continuing living expenses at a permanent place of residence. Rosenspan v. U.S.,438 F.2d 905, 912 (2nd Cir. 1971), cert. denied 404 U.S. 864; James v. U.S.,308 F.2d 204, 206-208 (9th Cir. 1962). Whether the petitioner had a tax home is a factual question, and the burden of proof is on the petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rambo v. Commissioner,69 T.C. 920, 923-924 (1978); Rule 142(a), Tax Court Rules of Practice and Procedure.
In support of his contention that San Diego was his tax home during 1974, petitioner points out that he was in San Diego, off and on, for 2-1/2 to 3 months of that year; that he always stayed at his cousin's house when he was in San Diego that year; that he kept his personal belongings and furnishings at his cousin's San Diego home throughout the year; that he listed his cousin's San Diego address on his driver's license, voter's registration, and tax returns; and that he paid rents to his cousin in cash and labor which covered the whole year. Petitioner further *546 relies on Rev. Rul. 73-529, 1973-2 C.B. 37, which sets forth for administrative purposes respondent's test for determining whether a taxpayer has a primary abode or is an itinerant. Three objective factors are used under this ruling to determine whether the taxpayer had a home in a real and substantial sense: (1) Whether the taxpayer performs a portion of his business in the vicinity of his claimed abode and used such abode (for purposes of his lodging) while performing such business there; (2) Whether the taxpayer's living expenses incurred at his claimed abode are duplicated because his business requires him to be away therefrom; and (3) Whether the taxpayer - (a) has not abandoned the vicinity in which his historical place of lodging and his claimed abode are both located, (b) has a member or members of his family (marital or lineal only) currently residing at his claimed abode, or (c) uses his claimed abode frequently for purposes of his lodging. Based on this ruling, if a taxpayer fails to satisfy at least two of these three factors, then he is an itinerant whose home is located wherever he happens to be working. Based on the record herein, petitioner *547 has failed to establish that he had a sufficient nexus with San Diego, or with any other city, to demonstrate a permanent tax home from which he was away in 1974. Petitioner has not shown that he performed any sales work on behalf of Chromalloy during the 2-1/2 to 3 months that he was in San Diego during 1974. Although petitioner testified that he had some work assignments for Chromalloy while in San Diego during 1973, his only testimony regarding his activities in San Diego during 1974 was that he devoted two to three weeks to repainting his cousin's house. In the absence of any evidence as to how the petitioner spent the balance of this period in San Diego during 1974, we conclude that the petitioner has failed to establish the first factor of respondent's ruling on which he relies. Furthermore, petitioner's $500 payment to his cousing during 1974 does not constitute substantial and continuing living expenses which would justify the deduction of his costs for meals and lodging while traveling on behalf of Chromalloy. Hicks v. Commissioner, supra at 75. Petitioner failed to show how much of this amount represented the repayment of rents as opposed to living *548 expenses and how much covered 1974 rents as opposed to other years' rents. Even if this $500 did cover various "rents during 1974, the individual payments comprising this amount were not sufficiently identified as rents for the availability of a room for petitioner's lodging purposes in his cousin's home as opposed to fees for petitioner's storage of his personal belongings in that home. In the event that such payments did cover rents for lodging purposes, the petitioner has nevertheless failed to establish any business connection with San Diego during 1974 which would justify his maintenance of his tax home there for that year. Bochner v. Commissioner,supra at 827-829. Under the circumstances, we can only conclude that San Diego was petitioner's personal choice as a place to store his belongings. Moreover, during the short time that petitioner stayed with his cousin in 1974, there is no evidence that he incurred any duplicate living expenses away from San Diego. Neither is there proof of whether or not petitioner received his $15 a day per diem for living expenses from Chromalloy during the days in 1974, if any, when he worked in San Diego. Petitioner *549 has also failed to show whether or not the costs of his meals and lodging away from San Diego were greater than the costs of such items in San Diego. Accordingly, petitioner has failed under the tests enunciated in James v. U.S.,supra, and Rosenspan v. U.S.,supra, to establish that he had a permanent tax home during the year in question. [4]
Although we hold that the petitioner could not deduct the entire costs of his meals and lodging away from San Diego under section 162(a)(2), he might hve incurred some ordinary and necessary business expenses, in San Diego or elsewhere, which would be deductible under section 162(a). However, petitioner had the burden of allocating these costs between personal and business expense. Interstate Transit Lines v. Commissioner,319 U.S. 590, 593 (1943); Deputy v. Du Pont,308 U.S. 488, 493 (1940). Since the petitioner has made no such effort *550 [5] to distinguish the claimed meals and lodging expenses herein, he is not entitled to any deduction for such expenses under section 162(a). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated.↩
2. Although $1,200 of the loan from petitioner's cousin was clearly designated as rents covering 24 months, it is unclear from the record how much of the $2,500 represented rents as opposed to living expenses and what payments covered rent in 1974 as opposed to rents in other years. Moreover, petitioner moved to San Diego in late 1970 or early 1971 and left for South Dakota in March of 1973, leaving a period of roughly 50 months during which petitioner allegedly paid rent to his cousin. However, the only evidence that petitioner paid his cousin any rents in addition to those paid for 24 months was his unsupported testimony that he performed odd jobs around his cousin's home in lieu of cash rents for such months.↩
3. Sec. 162 provides in pertinent part: (a) IN GENERAL-there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-***(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
4. In other cases involving the same employer, this Court likewise reached the same conclusion. See Valdez v. Commissioner,T.C. Memo 1979-90; Rauchwerger v. Commissioner,T.C. Memo 1978-177↩
5. Although petitioner's counsel requested on brief that the Court hear additional testimony concerning the allocation of petitioner's travel expenses between personal and business expense or make its own allocation of such expenses under the doctrine of Cohan v. Commissioner,39 F.2d 540, 543-544↩ (2d Cir. 1930), he failed to submit any evidence in support of his informal motion on which an allocation could be based.