MICHAEL F. GLEESON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gleeson v. Commissioner
Docket No. 13195-82.
United States Tax Court
T.C. Memo 1985-404; 1985 Tax Ct. Memo LEXIS 237; 50 T.C.M. (CCH) 680; T.C.M. (RIA) 85404; August 7, 1985. Earle J. Niederlueke, for the petitioner. Genelle F. Forsberg, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice dated March 10, 1982, respondent determined a deficiency in petitioner's Federal income tax liability for 1979, in the amount of $1,350.62. After a concession by petitioner, the issue for decision is whether petitioner is entitled to deduct business expenses under section 162(a)(2) [1] for meals and lodging incurred while "away from home." FINDINGS *238 OF FACT Some of the facts are stipulated and are so found. Petitioner Michael F. Gleeson resided in St. Michael, Minnesota, at the time the petition herein was filed. Petitioner timely filed his individual Federal income tax return for 1979. Petitioner lived with his parents in Wayzata, Minnesota, a Minneapolis suburb, from childhood until his first marriage in August of 1977, when he moved with his then-wife to a house they rented in nearby Mound, Minnesota. The following spring petitioner and his first wife separated, and in April of 1978, he moved back to his parents' Wayzata home. At about that same time petitioner, who had developed an interest in electrical construction work, decided on a change of career. In March of 1978 he left his position as a desk salesman with the firm he had worked for since 1972, and joined the International Brotherhood of Electrical Workers (IBEW), Local 160, as a groundman. During 1978 and 1979, Local 160 used a referral list for assigning its members to construction jobs in the Minneapolis area and in other parts of Minnesota. Petitioner's first two union assignments, from March of 1978 through January of 1979, were close enough to *239 his parents' home to allow him to stay in Wayzata and commute daily to the jobsites. From February through December of 1979, petitioner was assigned by the union to jobs in three different locations in Minnesota--Baudette, Effie, and Grand Rapids. While working in Baudette, Effie, and Grand Rapids, Minnesota, petitioner stayed overnight at the jobsites. From mid-April of 1979 until August of 1979, he stayed at the jobsites during the week but started spending weekends with his parents in Wayzata, or in Maple Plain, another suburb of Minneapolis, at the home of a friend, Mary Currens ("Mary"). Petitioner also spent several weekends that summer with Mary, who is now his wife, at a cabin her parents owned in Aitkin, Minnesota. From August of 1979, petitioner stayed with Mary on his weekend return trips to Minneapolis, and in December of 1979, when the dissolution decree ending his first marriage was entered, he moved his belongings from his parents' home to hers. Petitioner spent a total of 225 days at the Baudette, Effie and Grand Rapids jobsites from February through December of 1979. Some 40 days, mostly weekends, were spent at his parents' Wayzata home or with Mary during this *240 period.Nine days were spent at the Aitkin cabin. Petitioner also spent about four weeks in October at a hunting lodge in Canada. Petitioner did not pay his parents any rent while he stayed with them. He did perform odd jobs around the home, such as painting, landscaping, building decks, mowing the lawn, and raking leaves. Nor did petitioner pay Mary rent when he began staying with her. However, during the last four months of 1979 he gave her $100 to $200 a month - whatever was "leftover" from his paycheck - to help pay bills or buy groceries. Petitioner also was attempting to pay his estranged wife $175 per month in support payments. His 1979 Federal income tax return reflects a deduction of $1,233 attributable to alimony payments. OPINION Respondent has conceded that petitioner has substantiated $1,575.38 expended for meals and $1,231.44 for lodging at the Baudette, Effie, and Grand Rapids jobsites in 1979, but contends that petitioner has not established that he had a "home" for purposes of deducting these expenditures under section 162(a)(2). Section 162(a)(2) allows a decuction for "traveling expenses * * * while away from home in the pursuit of a trade or business. *241 " To qualify for a deduction thereunder, three conditions must be met: (1) the expenses must be ordinary and necessary; (2) the expenses must have been incurred while petitioner was "away from home;" and (3) petitioner must have incurred the expenses in pursuit of a trade or business. Commissioner v. Flowers,326 U.S. 465 (1946), rehearing denied 326 U.S. 812 (1946); Deamer v. Commissioner,752 F.2d 337, 339 (8th Cir. 1985), affg. per curiam a Memorandum Opinion of this Court; Cockrell v. Commissioner,321 F.2d 504, 507 (8th Cir. 1963). Respondent has not argued that petitioner has failed to satisfy the first and third tests of Flowers. The issue in this case is whether petitioner was "away from home" when he incurred the expenses. A taxpayer obviously must have a tax home in order to be "away from home." A taxpayer's principal place of employment is generally considered to be his tax home for purposes of section 162(a)(2). Weiberg v. Commissioner,639 F.2d 434, 437 (8th Cir. 1981); Michaels v. Commissioner,53 T.C. 269, 273 (1969). When a taxpayer who has no principal place of *242 business takes a temporary job assignment in a new location, his established residence is considered his tax home. Dean v. Commissioner,54 T.C. 663 (1970); Burns v. Gray,287 F.2d 698 (6th Cir. 1961). However, if a taxpayer accepts temporary employment, has no principal place of business, and has no personal residence, he is not eligible for a deduction under section 162(a)(2) because he is "never considered to be away from home." Deamer v. Commissioner,supra at 339; Hicks v. Commissioner,47 T.C. 71 (1966). While the subjective intent of the taxpayer is to be considered in determining whether he has a tax home, for purposes of section 162(a)(2) this Court and others consistently have held that objective financial criteria bear a closer relationship to the underlying purpose of the deduction. The section is intended to mitigate the burden of a taxpayer who, because of the travel requirements of his trade or business, must maintain two places of abode and therefore incur additional living expenses. Brandl v. Commissioner,513 F.2d 697 (6th Cir. 1975); Kroll v. Commissioner,49 T.C. 557 (1968). *243 For a taxpayer who incurs "substantial continuing expenses" of a home which are duplicated by business travel away from home on a temporary basis, section 162(a)(2) provides some relief by allowing a deduction for the expenses of such travel. James v. United States,308 F.2d 204, 207 (9th Cir. 1962). Whether petitioner has a tax home is a factual question, and the burden of proof is on petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rambo v. Commissioner,69 T.C. 920, 923-924 (1978); Rule 142(a), Tax Court Rules of Practice and Procedure.
Respondent agrees that the job assignments petitioner held in 1979 were temporary. The point of dispute herein is whether petitioner had sufficient ties to the homes in Wayzata and Maple Plain, Minnesota, for either or both of those homes to be considered his tax home in 1979. Petitioner emphasizes that he had lived in his parents' home in Wayzata since early childhood, except for the short period of time in 1977 and 1978 during which he and his first wife established a home nearby. He kept his belongings at his parents' home for most of 1979. Although he did not pay his parents rent, *244 he argues that he did provide labor for various projects at their home. After August of 1979, petitioner began to stay regularly with Mary in Maple Plain and provided her money to buy groceries and pay bills. When his first marriage was dissolved in December of 1979, petitioner moved his belongings to Mary's home, and they were married a year later. All of the above, petitioner contends, establish that he had a tax home in Wayzata or Maple Plain in the year in question. Respondent argues that petitioner in 1979 did not incur substantial expenses of maintaining either his parents' home in Wayzata or Mary's home in Maple Plain, and that he therefore did not have a tax home to be away from in 1979. Respondent points out that petitioner did not pay his parents any rent or board while he stayed with them, and that the amounts given to Mary were primarily intended to cover the costs of meals while staying with her in Maple Plain. We agree with respondent. Petitioner has not shown that he incurred expenses in connection with the homes in Wayzata or Maple Plain that qualify either home as his tax home within the meaning of section 162(a)(2). In a similar case, Rosenblum v. Commissioner,T.C. Memo. 1970-111, *245 we held that an unmarried young man did not have a home at his parents' home for purposes of an "away from home" deduction because he did not contribute to the expenses of maintaining the home. [2] Petitioner argues that in lieu of rent he provided labor for various projects at his parents' home, but this contribution necessarily ceased when petitioner was several hundred miles away at a jobsite, as he was for most of 1979. Furthermore, although he testified to a long list of such projects undertaken during the "whole period of time" he stayed at his parents' home, petitioner provided no specific evidence of which, if any, of the projects were carried out during 1979. Petitioner apparently did not contribute financially to the costs of the projects, nor did he provide any other financial contribution to the maintenance of his parents' home in Wayzata.
Nor has petitioner established that he had a home in Maple Plain. The money he gave to Mary was what was "leftover" from his paycheck, and admittedly intended *246 in part to pay for meals he ate when he stayed with her. [3] The amounts of money given Mary by petitioner do not represent the substantial and continuing expenses that this Court has consistently required as a prerequisite to a finding of a tax home. [4]
In Brandl v. Commissioner,513 F.2d 697 (6th Cir. 1975), the Sixth Circuit affirmed a decision of this Court denying the taxpayer a deduction for away from home expenses. The taxpayer in that case was a technical representative who traveled 9 to 10 months per year. He stayed at his brother's home *247 between trips. Although the taxpayer did not have a formal rental agreement with his brother, he did buy groceries for his brother's family and undertook several home improvement projects. The court found that the taxpayer failed to establish the burden of duplicate expenditures necessary to qualify for the deduction. As the court explained, of critical importance in determining whether a taxpayer has a home within the meaning of section 162(a)(2) is proof that the taxpayer has incurred continuing expenses of maintaining a home, as well as the expenses of traveling. Brandl v. Commissioner,supra at 699-700. See also Rosenspan v. United States,438 F.2d 905 (2d Cir. 1971), cert. denied 404 U.S. 864 (1971); James v. United States,308 F.2d 204 (9th Cir. 1962); Rambo v. Commissioner,69 T.C. 920 (1978); Hicks v. Commissioner,47 T.C. 71 (1966); Deneke v. Commissioner,42 T.C. 981 (1964). Petitioner further argues that he had a tax home because support payments that were made to his first wife constituted expenses incurred in maintaining a home. However, petitioner *248 separated from his first wife and returned to his parents' home in March of 1978. He would not have been living with her even if he had been working locally. Therefore, the amounts he deducted as alimony do not represent duplicate expenses of maintaining a home, but payments he was legally obligated to make independently of maintaining a home. The facts of this case are distinguishable from others that involve construction workers on temporary job assignments at remote areas who maintained families and homes at other locations. See, for example, Dean v. Commissioner,54 T.C. 663 (1970); Leach v. Commissioner,12 T.C. 20 (1949); and Schurer v. Commissioner,3 T.C. 544 (1944). Although petitioner was on temporary job assignments in 1979, his failure to establish his own home anywhere other than where he was working in that year is fatal to his claim herein. The maintenance of some of his belongings at his parents' home and occasional visits to his parents and his girl friend simply do not constitute the establishment of a tax home. [5]
*249 For the reasons set forth above, we hold that the expenses petitioner incurred in 1979 for means and lodging are not deductible under section 162(a)(2). Accordingly, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the taxable year in issue.↩
2. Similar conclusions were reached in Lichtenberger v. Commissioner,T.C. Memo, 1985-370; and Thurman v. Commissioner,T.C. Memo. 1970-114↩.
3. Petitioner testified that he provided the labor and some of the costs of materials for a remodeling job at the Maple Plain house, but he provided no evidence of what the project was or of the extent of his financial contribution.↩
4. This case is similar in some respects to Bauer v. Commissioner,T.C. Memo. 1973-111↩. In that case the taxpayer, who worked on various construction projects, stayed weekends with his girl friend and gave her money to reimburse her rent and grocery expenses. The Court held that the payments were gratuitous, and that the taxpayer did not maintain an abode with her.
5. See also Cross v. Commissioner,T.C. Memo. 1979-59↩, which involved a construction worker from Minnesota who worked at a remote jobsite and who failed to prove that he had established a home other than where he was working.