HORACE S. CASE AND PEGGY C. CASE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Case v. Commissioner
Docket No. 17999-82.
United States Tax Court
T.C. Memo 1985-530; 1985 Tax Ct. Memo LEXIS 102; 50 T.C.M. (CCH) 1291; T.C.M. (RIA) 85530; October 10, 1985
Horace S. Case, for the petitioners. J. Craig Young, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined deficiencies of income tax for the years 1979 and 1980 against petitioners as follows: Year
Deficiency
1979
$1,941
1980
1,377
The issues which we must decide are: (1) Whether petitioner Horace S. Case (hereinafter "petitioner" [1]), is entitled, under sections 62 and 162[2] to deductions for travel, meals, and lodging expense *103 incurred in 1979 and 1980 in securing employment as a merchant seaman; (2) whether, under section 162, petitioner is entitled to claimed business expense deductions in 1979 with respect to one or more trades or businesses allegedly carried on by him in such year. Some of the facts herein were stipulated, and such stipulation, together with attached exhibits, are incorporated herein by this reference. At the time of filing their petition herein, petitioners were residents of Canton, Mississippi. Petitioners, husband and wife, filed joint Federal income tax returns for the years 1979 and 1980. Our remaining findings of fact and opinion on the issues presented herein are grouped together for convenience. 1. Travel Away from Home Expenses
Petitioner is a lifelong resident of Canton, Mississippi. *104 In the years before us, as well as for a number of years prior thereto, his primary occupation was that of a merchant seaman. He was qualified as a second or third merchant marine engineering officer, and generally served in such capacity on various ships of the merchant marine. New Orleans, Louisiana, was the closest major seaport to petitioner's home in Canton, Mississippi. In order to seek employment on a merchant vessel, petitioner would travel from his residence in Canton to New Orleans and would go to the merchant marine union hiring hall in that city. There, petitioner would learn of jobs available on one or another merchant ship and, through the union hiring hall, would be employed by the owner of the ship to serve as an engineering officer for the duration of a voyage. Although the term of employment with each respective ship was not for a fixed period of time in days or months, it was for the duration of the voyage, which might last from two weeks to three months. At the conclusion of the voyage, petitioner's employment was terminated, and he was paid off, either at New Orleans or at some other port where the ship terminated its voyage. Petitioner would then return *105 to Canton. Although petitioner was employed at New Orleans by the ship he joined, his services were not performed at New Orleans but aboard the ship, wherever in the world it might be traveling. At times, petitioner had signed aboard ships in ports such as Houston, Texas, Mobile, Alabama, or Baton Rouge, Louisiana, but he generally preferred to sign aboard a ship at New Orleans. In connection with seeking employment as a merchant seaman, petitioner incurred expenses for travel, meals and lodging between his residence in Canton, Mississippi and New Orleans, in the amounts of $4,850 in 1979 and $5,446 in 1980. At the time these expenses were incurred by petitioner, he was unemployed, that is, his expenses were incurred prior to signing aboard a ship, or were incurred after he was discharged at the end of the voyage. Petitioner has never maintained any dwelling or residence in New Orleans or in any place other than Canton, Mississippi, where petitioners have resided for many years and have raised their family of three sons. In the year 1979, petitioner served aboard ships owned by the following employers: Overseas Bulktank Corporation, Pelican Marine Carriers, Inc., Panama Canal *106 Commission and Panama Canal Company. In the year 1980, petitioner served aboard ships owned by the following employers: Louisiana Sulphur Carriers, Inc., Vivian Tankship Corp., Sea-Land Service, Inc., Delta Steamship Lines, Inc., Westchester Marine Company, Inc., Panama Canal Commission, and Waterman Steamship Corporation. Of all the above employers, only Delta Steamship Lines, Inc. was headquartered in New Orleans. In his joint returns for 1979 and 1980, petitioner deducted the above amounts as an adjustment to gross income, under the provisions of section 62(1). [3] Upon audit, respondent disallowed the claimed expenses upon the grounds that (1) it was not established that the funds were an ordinary and necessary business expense or were spent for the claimed purpose and (2) that the sums were not deductible in any event, since petitioner was not away from his tax home when they were spent. [4]
*107 In this case, we are once again faced with the much litigated problem of when a taxpayer may deduct traveling expenses (including meals and lodging) while away from home. Section 162(a)(2) provides, in relevant part: There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -- * * * (2) Traveling expenses (including amounts expended for meals and lodging * * *) while away from home in pursuit of a trade or business * * *. For purposes of section 162(a)(2), a taxpayer's "home" does not necessarily mean his actual residence, but rather the vicinity of his actual place of employment. Bochner v. Commissioner,67 T.C. 824 (1977). If a taxpayer maintains his residence at a location other than his "tax home," i.e., his place of business, for his own convenience, the expenses of traveling between the two locations are considered to be nondeductible personal commuting expenses. Heuer v. Commissioner,32 T.C. 947 (1959), affd. per curiam *108 283 F.2d 865 (5th Cir. 1960); sections 1.162-2(e), 1.262-1(5), Income Tax Regs.
There is an exception to the above rule: where the taxpayer's employment away from his residence is temporary, rather than indefinite, and if no principal place of employment can be established, the expenses incurred in traveling to and from his residence to the job site are deductible. Under these circumstances, the taxpayer's "tax home" is considered to be his residence, and he is therefore considered to be "away from home" within the meaning of section 162(a)(2) while working at his temporary job. See Peurifoy v. Commissioner,358 U.S. 59 (1958); Bochner v. Commissioner,supra. To qualify for this exception, however, the taxpayer must establish that he had a permanent residence, or home, to be away from. Rambo v. Commissioner,69 T.C. 920 (1978); Bochner v. Commissioner,supra;Barone v. Commissioner, 85 T.C.     (Sept. 17, 1985). The questions thus presented are essentially factual in nature, and petitioners have the burden of proof with respect to them. *109 Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Admittedly, the case is not crystal clear, but on balance we think that petitioner has carried his necessary burden of proof and should prevail here. In so holding, we consider the following circumstances persuasive: 1. It is clear that petitioner here had a permanent home residence in Canton, Mississippi, where he had lived all his life, where his wife lived, and where they had raised their family. Thus, we are not confronted with the situation presented in Bochner v. Commissioner,supra, and Deamer v. Commissioner,T.C. Memo. 1984-63, affd. 752 F.2d 337 (8th Cir. 1985), where the taxpayers were found not to have any permanent home base at all, but rather were itinerants. Here, there was clearly a home base, and petitioner traveled away from it in the course of his occupation as a merchant seaman. Cf. Michaels v. Commissioner,53 T.C. 269 (1969). 2. We are satisfied that it would be improper under the facts to hold that New Orleans was petitioner's principal place of business or his "tax home." The facts show that petitioner traveled *110 from his home in Canton, Mississippi, to New Orleans to secure employment aboard a ship. He did this by going to the union hiring hall in New Orleans, where he learned of job openings and then went to apply for employment to the individual ship. He was not employed by the union but rather by the ship whose articles he signed. Petitioner therefore performed his duties as a marine engineer aboard ship sailing the seven seas. New Orleans was nothing more than the point of departure. We do not think that the "principal place of employment" simply means the place where the ship's articles were signed, but rather means the principal place where the employment duties were performed. The instant case is thus distinguishable from Heuer v. Commissioner,supra, and Andrews v. Commissioner,T.C. Memo. 1978-135, both much relied upon by respondent. In Heuer, the taxpayer was a Mississippi river pilot, whose assignments, secured through the local pilots' association (of which he was a member, and which had the exclusive right to provide piloting services on the Mississippi River in and around New Orleans), involved moving ships within the New Orleans *111 harbor, and taking ships to and from New Orleans and the Gulf of Mexico. The area of the taxpayer's employment was therefore localized, with New Orleans as its focal point, and indeed the majority of taxpayer's duties were performed in the port itself in moving ships from one dock to another. Thus, it was correct for us to hold that New Orleans was the taxpayer's principal place of business. Likewise, in Andrews, the taxpayer, also a merchant seaman, lived in Noble, Oklahoma, but traveled to Houston, Texas, where his principal employment was serving as "night relief engineer" on ships docked in Houston. Each of these jobs, secured (like petitioner's) through the local union hiring hall, lasted only one or two nights. In the year in question, the taxpayer only had one employment which involved going to sea. Here again, the Court had no difficulty in finding that Houston was established as the taxpayer's principal place of business, so that his traveling expenses between his residence in Oklahoma and Houston were to be considered personal nondeductible expenses. We think that the above two cases are clearly distinguishable on their facts from the instant case. Here, petitioner's *112 employment was not localized in and around New Orleans. The only contact with New Orleans was to go there, find employment in a ship, and steam off. In Dean v. Commissioner,54 T.C. 663 (1970), taxpayer was a construction worker with a permanent residence in Williamsport, Md., some 80 miles from Washington, D.C., where the headquarters of his craft union was located. Taxpayer secured temporary employment through the union in Washington on construction jobs at a number of different locations, and with different employers, within a large geographical area served by the union, and encompassing the northern half of Virginia, the District of Columbia, and southern Maryland. In the year before the Court (1965), there were three such employments, ranging in time from 57 days to 178 days, with two such jobs sites in Maryland and one in Virginia. In holding that taxpayer was entitled to deduct his travel and living expenses incurred while engaged on these jobs as job-related expenses incurred in his trade or business and away from home, the Court said *113 (54 T.C. at 667, 668): In Ronald D. Krool,49 T.C. 557, 564-565, we stated the rule to be "that when a taxpayer maintains a residence away from the vicinity of his nontemporary principal place of business, that residence is not his home within the meaning of section 162." The corollary of this is that where a taxpayer does not have a nontemporary principal place of business away from the vicinity of his residence, then his place of residence remains his home for tax purposes. Respondent's learned counsel, * * * continued his defense of the deficiency determined herein, by advancing the argument that the union headquarters in Washington constituted petitioner's "principal place of business, employment, or post or station at which he was employed." Only if we should agree with this argument of respondent and should conclude that petitioner's "tax home" was Washington, D.C., would it be possible to decide in favor of respondent on the record before us.We are unable to agree with respondent's argument on this point or to reach the conclusion that Washington was petitioner's "tax home." It appears that officers of petitioner's union functioning at the *114 union headquarters in Washington were helpful and even instrumental in obtaining employment for petitioner during the taxable year. However petitioner worked and created income by his various employments not in Washington but in Chalk Point, Front Royal, and Landover. It was in those places rather than Washington that petitioner had a place of business, a place of employment, or a "post or station at which he was employed." Since these were temporary places of business and employment, petitioner's residence did not cease to be "his home within the meaning of section 162." Therefore Washington was not his "tax home" and his expenses incident to the Landover employment were not incurred in the vicinity of his "tax home." [Footnotes omitted.] As in Dean, there is no doubt that petitioner's union in New Orleans was "helpful and even instrumental in obtaining employment for petitioner during the taxable year." Further, as in Dean, there is no doubt that petitioner's employment was carried out elsewhere, away from the union hall, on behalf of other employers, and that there was no "tax home" or principal place of employment in New Orleans. 3. We think that petitioner's jobs *115 as marine engineer on various merchant vessels are to be considered temporary rather than indefinite. The record is clear that each of these employments was separate and unrelated one to the other. Petitioner would go to the union hiring hall in New Orleans in search of a job. The union would inform him of an opening, and he would go to the ship docked in New Orleans and sign on for the voyage. That voyage might last a couple of weeks or it might last as much as three months, but when the voyage terminated, and wherever it terminated, so did petitioner's job. As shown in our findings of fact, petitioner worked on a number of different ships in the two years before us, and for a number of different and unrelated employers. We are satisfied that the jobs here were temporary not indefinite. See and compare McCallister v. Commissioner,70 T.C. 505, 509 (1978). 4. Petitioner's primary occupation, i.e., his trade or business, was that of a marine engineer, or merchant seaman. In pursuit of this trade or business and in seeking employment, the expenses were properly incurred, and it does not affect deductibility that they were incurred at a time when petitioner was *116 between jobs and unemployed. Haft v. Commissioner,40 T.C. 2 (1963); Primuth v. Commissioner,54 T.C. 374 (1970); Cremona v. Commissioner,58 T.C. 219 (1972). The only difference his employment status makes is to enable petitioner to deduct the claimed amounts as an adjustment to gross income under section 62(1), which he properly did. On this issue, we hold for petitioners. 2. Other Claimed Business Expenses
For the year 1979, petitioner attached to his joint income tax return a schedule C, indicating income and deductions from a business carried on by him, under the name "Case Auctioneers - Years Ahead Co." Respondent made no adjustment to the income and deduction items reported therein, with the exception of a claimed deduction in the amount of $3,015, which respondent disallowed on the grounds that it had not been demonstrated that this amount constituted an ordinary and necessary business expense of petitioner. At trial, petitioner admitted that the questioned item was composed of two parts: (1) a payment of $700 made to an organization known as "Christian Books Unlimited," for the benefit of petitioners' son Mark, *117 who was involved in some fashion with the enterprise; (2) a payment of $2,315 to petitioners' son David to cover expenses incurred by him in attempting to establish a business enterprise for the purpose of manufacturing wood alcohol for fuel. The record is extremely sketchy as to what the nature of the business activity was, conducted under the name of "Case Auctioneers - Years Ahead Co." by petitioner. At various points, petitioner testified that he was attempting to organize and operate an auctioneering business, and at other points petitioner testified that he was trying to propagate the Gospel through the printing, dissemination and sale of bibles printed in newspaper format. Whatever the ramifications of petitioners' business enterprise may have been, however, one thing was clear from the stipulated facts and petitioner's testimony: neither payment had any relationship to a business enterprise in which petitioners had an interest, but, on the contrary, each payment was for the benefit of one of petitioners' sons, and with respect to a business enterprise in which such son did have an interest. No income from either of these enterprises was reported in petitioners' return. *118 Since the record fails to prove that the claimed expenditure was an ordinary and necessary business expenditure with respect to any business enterprise in which these petitioners had an interest, within the meaning of section 162, we must sustain respondent on this issue. Decision will be entered under Rule 155.
Footnotes
1. Petitioner Peggy C. Case is involved only by reason of having signed a joint return with petitioner Horace S. Case, and will not be further referred to herein. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
3. As pertinent here, sec. 62 provides: For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: (1) Trade and Business Deductions.--The deductions allowed by this chapter * * * which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee. ↩
4. Respondent has now conceded that the claimed amounts, and the purpose for which spent, have been substantiated by petitioner.↩