RONALD AND SHARON BASDEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Basden v. Commissioner
Docket No. 7992-76.
United States Tax Court
T.C. Memo 1978-232; 1978 Tax Ct. Memo LEXIS 283; 37 T.C.M. (CCH) 991; T.C.M. (RIA) 78232; June 22, 1978, Filed *283 Taxpayer, a welder whose residence was in North Carolina, was away from home while employed for about 1 year in Maryland and he is entitled to deduct his expenses for meals and lodgings while there. His employment in Maryland was temporary and his tax home did not change from North Carolina to Maryland. Ronald Basden, pro se. Isham B. Bradley, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioners' *284 1974 income tax of $ 1,779.81. Petitioners have conceded respondent's disallowance of a $ 103.50 claimed deduction for certain work clothing, leaving only this issue for our decision: Whether under section 162(a)(2n8, I.R.C. 1954, [1] petitioners are entitled to a deduction for traveling expenses (including meals and lodging) while away from home in pursuit of employment as a welder. FINDINGS OF FACT Ronald and Sharon Basden, husband and wife, resided in Beulaville, N.C., when their petition was filed in this case. Sharon Basden is a petitioner only because the couple filed a joint return for calendar year 1974 (at the Internal Revenue Service Center, Memphis, Tenn.), and references herein to petitioner are to Ronald Basden alone. Ronald and Sharon Basden were born and reared in Beulaville, N.C. Ronald's father died when Ronald was young, and he took up welding because his father had been a welder. He began an apprenticeship in 1966 out of the Plumbers and Steamfitters Union, Local 785, at Raleigh, N.C. Later Ronald attended *285 a trade school and was certified as a welder in 1969. Ronald always tried to work as close to his residence as possible, but when work was not available there he had to travel. The practice of his union (Local 785) was to contact othr locals to secure jobs for its members if there was no work in a member's home area. When petitioner worked through other union locals, he worked on permit of the local in that area, but remained affiliated with his own Local 785 in Raleigh. Members affiliated with a local and working through that local have a priority in the event of layoffs over members affiliated with outside locals, who are called "travelers." Ronald was successful in obtaining work near his residence in North Carolina until about 1973. From 1970 to 1973 his jobs were at various distances from Beulaville, within the State of North Carolina, and on occasion outside the State. His jobs varied in length from as short as 2 weeks to as long as a few months. During 1973 Ronald worked in West Virginia from January to April, in Maryland from about May to June or July, in New Bern, N.C., for a couple of weeks, and in Fairview, N.C., until about August. After waiting for work "close *286 to home" for a couple of weeks, Ronald had to "go back up north." In the latter part of September 1973, Ronald obtained employment at Chalk Point, Md., with a firm called United Engineering, which was constructing a conventional electric generator. Among other things, petitioner's work was to install tubing and other delicate work in instrument panels for the generator. This employment was obtained through the Washington, D.C., Local 602 of the Plumbers' and Steamfitters' Union. Ronald was given no idea how long the work would last. While working on this project, he worked on a permit issued by Local 602. Because Local 602 was a big local and "travelers" such as Ronald get laid off when area work becomes slack, he did not expect to stay long at Chalk Point. Throughout his stay in Maryland Ronald was in weekly contact with the business manager of his union local in North Carolina inquiring for employment availability in North Carolina. However, Ronald remained continuously employed at Chalk Point, Md., until October 4, 1974, when he was laid off apparently because Federal funds for the project had been cut off. When Ronald first arrived in Maryland he rented a motel room. *287 At some later time he moved to an apartment in Charlotte Hills, Md. No jobs were available for Ronald in North Carolina when his employment in Maryland terminated, so he accepted work in Tampa, Fla., where he remained from October of 1974 to March of 1975. Ronald then returned to North Carolina. Petitioners' permanent residence at all relevant times was in Beulaville, N.C., where they lived in one of two houses owned by Ronald's mother. Ronald's mother lived in the other house. Petitioners paid their utilities and maintained the house, but paid no rent. While Ronald was away at jobsites, Sharon periodically visited with him. Petitioners had no children during 1974. Petitioners had no business activity in North Carolina other than Ronald's employment as a welder. On their 1974 joint return petitioners claimed employee business expense deductions as follows: Travel
$ 3,009.30
Room
2,253.00
Food
1,960.00
Laundry
490.00
$ 7,712.30 Respondent disallowed a deduction for $ 6,576.64, the expenses incurred by petitioner in Chalk Point, Md. ULTIMATE FINDINGS OF FACT Petitioner's home for tax purposes during 1974 was Beulaville, N.C. Petitioner's *288 employment at Chalk Point, Md., in 1974 was temporary rather than indefinite. OPINION At issue is whether a deduction is allowed for petitioner's travel expenses while working as a journeyman welder in Chalk Point, Md. Pursuant to section 162(a)(2), [2] his travel expenses are deductible if petitioner was "away from home" in the pursuit of his employment. [3] As a starting point, "home" in section 162(a)(2) has been interpreted by this Court to mean the vicinity of the taxpayer's principal place of employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. Kroll v. Commissioner,49 T.C. 557, 561 (1968). [4]
*289 With this point of departure, we have allowed a deduction for travel expenses where the employment at another location is temporary as distinguished from indefinite in nature. The temporary-indefinite rule and its purpose were explained in Kroll v. Commissioner,supra, as follows: But if a taxpayer has a principal place of employment in one location and accepts temporary work at another location, his presence at the second location is regarded as "away from home." E.G. Leach,12 T.C. 20 (1949); Harry F. Schurer,3 T.C. 544 (1944). However, if the taxpayer, having a principal place of employment in one location, accepts work at another location which is not temporary but is of indefinite or indeterminate period, his presence at the second location is not regarded as "away from home." Commissioner v. Peurifoy,254 F. 2d 483 (C.A. 4, 1957), reversing 27 T.C. 149 (1956), affirmed per curiam 358 U.S. 59 (1958). Further, if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment *290 for purposes of the statute becomes the taxpayer's home. Leo M. Verner,supra; Arnold P. Bark,6 T.C. 851 (1946). The purpose of the "away from home" provision is to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses. Leo M. Verner,supra; James v. United States,308 F. 2d 204 (C.A. 9, 1962). The "tax home" doctrine is directed toward accomplishing this purpose. In effect, it asks the question whether in a particular case it is reasonable to expect the taxpayer to maintain a residence near his trade or business and thereby incur only one set of living expenses, which are of course nondeductible under section 262. If it is reasonable so to expect, as where a taxpayer has only one post of duty, which is permanent, then if he in fact chooses to maintain his residence elsewhere and incur living expenses near his trade or business as well, the duplication of expenses thereby resulting arises not from the needs of his business but from the taxpayer's personal choice. When, then, a taxpayer moves to a *291 new permanent post of employment, it is generally reasonable to expect him to move his residence as well, and if he does not do so, and thereby incurs living expenses at his new post of employment while maintaining his old residence, the duplication again does not arise from business needs, but from personal considerations. If, however, the taxpayer's stay at the new post of business is to be temporary--"the sort of employment in which termination within a short period could be foreseen" ( Beatrice H. Albert,13 T.C. 129, 131 (1949))--it is not reasonable to expect him to move his residence; so if he incurs living expenses at the temporary post, these are traveling expenses required by the trade or business rather than by personal choice, and they are therefore deductible. * * * [49 T.C. at 562-563.] Respondent argues that petitioner's work in Chalk Point, Md., was not temporary but of indefinite or indeterminate duration so that the site of his employment in Maryland became his home for section 162(a)(2) purposes. As such, respondent simply contends petitioner was not away from home as required by the statute and thus his travel expenses while in *292 Maryland are not deductible. Because respondent frames the issue so that the deduction turns on whether petitioner's job at Chalk Point, Md., was temporary, we assume he concedes that Beaulaville, N.C., was petitioner's "home" before he went to work in Maryland. [5] We need discuss further only the factual question of whether petitioner's work in Maryland was temporary in nature. Implicit in respondent's determination that the job was not temporary is an application of the rule set forth in Rev. Rul. 60-189, 1960-1 C.B. 60, that the allowance of a deduction under the temporary-indefinite rule would be limited to situations where both the expectation and actual duration of the work is less than 1 year. In his opening statement, respondent argued "that the job lasted for over a year, indicating that the job was *293 indefinite in nature." Respondent's 1-year rule may provide a useful rule of thumb for his own purposes, but we are not bound by such a mechanical test. We must look at all the facts and circumstances. We are convinced by petitioner's testimony and surrounding circumstances that his work at Chalk Point, Md., was temporary in contemplation at the time of the acceptance. The record does not reveal the size of the construction project and Ronald was given no idea how long the work would last, but he could not expect to work on the project for a substantial period of time because he was only a traveler working on permit with a big union local, Washington, D.C. Local 602. According to petitioner, work was slack in 1974 and he looked from day to day to get laid off and be replaced by members of Local 602. He was fortunate that the work actually lasted about 12-1/2 months. The likelihood of being laid off because petitioner was a traveler distinguishes this case from Commissioner v. Peurifoy,254 F. 2d 483 (4th Cir. 1957), revg. 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958), a case relied upon by respondent. There a deduction *294 was denied where the only evidence of expected duration was that other projects taxpayer worked on had been temporary; but taxpayer's work was on an apparently large construction project (a new Dupont plant) not near a large metropolitan center (Ingston, N.C.), where local supply of necessary skills had to be greatly augmented by travelers. Petitioner's own experience during the year preceding his employment at Chalk Point indicated that any job he was hired for outside his home area was apt to be of short duration, and the evidence in this case suggests that from the outset this job was fraught with uncertainties about its duration. Petitioner had no assurance that he would be able to stay on the job until completion of the project or for any extended period. His "traveler" status and lack of a contract precluded that. We also are satisfied that petitioner's employment in Mayland did not become indeterminat in fact. His status as a "traveler" did not change and other nonresident employees were constantly being laid off. Petitioner, to his surprise, worked on the Chalk Point, Md., project for about 12-1/2 months until he and the local men were laid off. Work on the project was *295 no longer available apparently because Federal funds for the project had been cut off. The uncertain duration of petitioner's employment and the shutdown of construction again distinguish this case from Peurifoy, There, of three construction workers working on the Dupont plant, one left after 20-1/2 months for an undisclosed reason, and two left after 12-1/2 and 8-1/2 months respectively, for personal reasons, not because work for people of their trades was no longer available. As a secondary argument, respondent suggests that petitioners incurred no doubling of expenses as a result of petitioner's employment in Maryland and there was no reason petitioners should maintain a residence in North Carolina. Absence of duplicative living expenses is certainly a factor to be considered, see Kroll v. Commissioner, supra, but it is not controlling, see Michaels v. Commissioner,53 T.C. 269 (1969). However, petitioners had duplicative expenses in any event. While the house they lived in in North Carolina belonged to petitioner's mother, and they paid no rent, it was the family home place and petitioners felt obligated to maintain it. In doing so, *296 they incurred expenses for utilities and maintenance. We find the circumstances were such that it was not reasonable to expect petitioners to move their residence to Maryland in 1974. On brief respondent expresses concern that a standard which places undue focus on personal or subjective considerations in determining whether it is reasonable for a taxpayer to move to a particular employment location appears to be emerging from this Court. Under such reasoning, respondent contends, it would never be reasonable for a taxpayer to move, no matter how long the employment duration, because the taxpayer, in his own mind, would never consider it reasonable to move. We believe respondent's concern is unfounded. While this Court has stated that pursuant to the purpose of the away-from-home provision, a proper inquiry is whether in a particular case it is reasonable to expect a taxpayer to move his residence to his place of employment, see Kroll v. Commissioner,supra,Tucker v. Commissioner,55 T.C. 783 (1971), it is the objective analysis of the trier of the facts that we refer to. Although changing economic travel and other conditions may *297 be given consideration, we do not believe this Court has stated or implied that the taxpayer's subjective or personal assessment of the situation alone is the criterion. See concurring opinion in Tucker v. Commissioner, supra.
On the record as a whole, we have found that petitioner's tax home during 1974 was Beaulaville, N.C., and that his employment at Chalk Point, Md., in 1974 was temporary. Accordingly, his travel expenses while away from home are fully deductible. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise specified.↩
2. Sec. 162(a)(2) provides: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and * * *↩
3. On brief respondent discusses other requirements of sec. 162(a)(2), see Commissioner v. Flowers,326 U.S. 465↩ (1946), but concedes that they are all met if the "away from home" limitation is satisfied. 4. For a discussion of other interpretations of the word "home," see the cases collected in 1 S. Surrey, W. Warren, P. McDaniel and H. Ault, Federal Income Taxation 512-513 (1972).↩
5. Whether respondent concedes that Beulaville, N.C., was initially petitioner's principal place of employment is not readily apparent. Compare Rev. Rul. 71-247, 1971-1 C.B. 54↩ (where all of a construction worker's regular work in a 12-State region was for short periods of time, respondent treated taxpayer's residence as his "tax home").