HARRY CARL TAYLOR II AND KAREN (EDWARDS) TAYLOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket No. 3787-83.
United States Tax Court
T.C. Memo 1985-449; 1985 Tax Ct. Memo LEXIS 179; 50 T.C.M. (CCH) 911; T.C.M. (RIA) 85449; August 27, 1985. Harry Carl Taylor II, pro se. Ronald T. Jordon, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $3,283 in petitioners' Federal income tax for 1980. The issue for decision is whether petitioners are entitled under section 162(a)(2)[1] to a deduction in the amount of $7,596.30 for living and transportation expenses incurred by petitioner Harry Carl Taylor II while working in Charleston, *180 West Virginia, during the period from January 1 to August 1, 1980. The answer depends upon whether he was "away from home" within the meaning of the section during that period. FINDINGS OF FACT Petitioners Harry Carl Taylor II and Karen (Edwards) Taylor, both natives of West Virginia, were legal residents of Charleston, West Virginia, when they filed their petition. They filed their joint Federal income tax return for 1980 with the Internal Revenue Service Center, Memphis, Tennessee. The issue to be decided turns mainly upon the activities of Harry Carl Taylor II and, for convenience, he will be referred to as petitioner. Petitioner received a Baccalaureate Degree from West Virginia University in 1967, a law degree from West Virginia University College of Law in 1976, and a Doctor of Philosophy degree from West Virginia University graduate school in 1977. He is licensed to practice law only in West Virginia. Upon his graduation from law school in 1976, petitioner took a job with the United States Navy Judge Advocate General Corps as a prosecutor of criminal cases. *181 In addition, he handled some Navy tort cases. He was stationed in Norfolk, Virginia, and lived in Virginia Beach. He remained with the Navy until 1979. In June 1979, petitioner took a job as a contracts administrator with Virginia Electric and Power Company (VEPCO) in Richmond, Virginia. Shortly thereafter, petitioner Karen (Edwards) Taylor (Mrs. Taylor) accepted employment as a librarian for the Henrico County, Virginia, school system. Petitioners purchased a residence near Richmond where they lived together until early 1980. In January 1980, petitioner learned that he might lose his job with VEPCO due to personnel cutbacks. He resigned his position with VEPCO and accepted a position as an associate in McKittrick & Vaughn, a law firm in St. Albans, West Virginia. He did not have a written employment contract with the firm, and he received no guaranty, written or oral, as to the length of his employment. Petitioner understood, however, that he could stay with the firm as long as his services were satisfactory to his employer. Petitioner lived in a boarding house in Charleston and frequently traveled to Richmond to be with Mrs. Taylor. Mrs. Taylor continued her employment *182 as school librarian until August 14, 1980, living in the family residence in Richmond. Petitioners continued to maintain their memberships in various social clubs, lodges, and a church in the Richmond area at least until late 1980. Almost immediately upon the beginning of his employment with McKittrick & Vaughn, petitioner was assigned and given primary responsibility for a large number of the firm's cases, many of which had been pending for a considerable period of time in the courts of several West Virginia counties. His assignment "was to work on cases and get them ready for trial and to litigate them as they were set." The cases assigned to petitioner involved a variety of issues, including workmen's compensation claims, social security claims, criminal charges, divorce suits, personal injury claims, real estate cases, contract disputes, and injunction proceedings. During the first 8 months of 1980, he worked with another attorney in the firm in handling the trial of one case; in all others, he handled the trials alone. In some cases, petitioner was introduced to the clients by a member of the firm; in others, he contacted the clients directly by telephone in preparing *183 the cases for trial. Petitioner's name was placed on the law firm's stationery about the middle of 1980. Petitioner worked with the law firm of McKittrick and Vaughn until May 1983. At that time, the firm split. From May to July 1983, petitioner worked for Mr. McKittrick. From July 1983 to the date of the trial, petitioner engaged in the practice of law as a sole practitioner in Charleston, West Virginia. On schedule A of their 1980 income tax return, petitioners took a miscellaneous itemized deduction in the amount of $7,596.30 for living expenses claimed to have been incurred by petitioner between January 1980 and August 1980 while living in Charleston and transportation expenses claimed to have been incurred by him in traveling between his place of employment in Charleston and the family residence in Richmond. In the notice of deficiency the deduction was disallowed with the following explanation: It is determined that the amount of $7,596.30 shown on your return as Miscellaneous Deductions is not allowable pursuant to section 162 of the Internal Revenue Code. Accordingly, your taxable income is increased $7,596.30. [2]
*184 OPINION Section 162(a)(2)[3] provides for the allowance of a deduction for ordinary and necessary business expenses, including amounts expended for traveling and for meals and lodging "while away from home in the pursuit of a trade or business." Petitioner contends that Richmond was his home from January 1 to August 1, 1980, and that he is, therefore, entitled to a deduction for his expenses of traveling back and forth between Richmond and Charleston and for his expenditures for meals and lodging while away from Richmond during that period. A taxpayer's home, for purposes of section 162(a)(2), is generally the taxpayer's abode at or near his principal place of employment. Michel v. Commissioner,629 F.2d 1071, 1073 (5th Cir. 1980), *185 affg. per curiam a Memorandum Opinion of this Court; Curtis v. Commissioner,449 F.2d 225, 227 (5th Cir. 1971), affg. a Memorandum Opinion of this Court; Jones v. Commissioner,444 F.2d 508, 509 (5th Cir. 1971), affg. 54 T.C. 734 (1970). Underlying this definition is the premise that a person will normally choose to make his home near his work; if he chooses to live elsewhere for personal or family reasons, the traveling and living expenses that he incurs as a result of that decision are nondeductible personal expenses under section 262. Kroll v. Commissioner,49 T.C. 557, 562-563 (1968); see James v. United States,308 F.2d 204, 206 (9th Cir. 1962). "The exigencies of business rather than the personal conveniences and necessities" of the taxpayer control in determining whether such expenses are deductible. Commissioner v. Flowers,326 U.S. 465, 474 (1946). In identifying a taxpayer's "principal place of employment," an exception is made for temporary employment--employment that is expected to last for only a short period of time. Jones v. Commissioner,444 F.2d at 510. *186 A taxpayer accepting such temporary employment may be permitted to deduct his travel expenses and duplicative expenses for meals and lodging even though such expenses are not incurred for the benefit of his employer. Commissioner v. Peurifoy,254 F.2d 483, 486 (4th Cir. 1957), revg. 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958); Jones v. Commissioner,444 F.2d at 510. But if the prospects are that his work will continue for an "indefinite" or "indeterminate" or "substantially long" period, then the deduction is not allowable. Jones v. Commissioner,444 F.2d at 510; Curtis v. Commissioner,449 F.2d at 227-228. Whether employment is temporary or indefinite is a factual question to be decided from all of the facts and circumstances of the case. Michel v. Commissioner,629 F.2d at 1073; Scotten v. Commissioner,391 F.2d 274 (5th Cir. 1968), affg. per curiam a Memorandum Opinion of this Court. We do not think petitioner has shown that his employment with the Charleston law firm was temporary. We find that it was for an indefinite or indeterminate *187 period. By its very nature, petitioner's work in preparing the numerous cases assigned to him for trial and trying them in the courts was expected to take a substantial period of time. Trial work requires research of the applicable law, investigation of relevant facts, collection of evidence, and planning its presentation. Although files are kept on such cases, much vital information acquired in trial preparation can hardly be recorded in files. It includes the trial attorney's mental impressions and judgments. A law firm employing an attorney to try a large number of pending cases would expect that attorney to stay with the firm for a substantial period of time. Indeed, petitioner testified that he understood that he could stay with the firm as long as his services were satisfactory. True, petitioner testified that, when he resigned from VEPCO and became an associate with the law firm, he wished to look around for some other job in Virginia or Washington, D.C., and that he made his commitment to live in West Virginia only after Mrs. Taylor's mother died in August 1980. But we think it relevant that petitioner resigned from VEPCO to accept the position with the law firm; VEPCO *188 did not terminate his services. Both he and Mrs. Taylor were born and reared in West Virginia. He had attended college and law school there and was not a member of the Bar of any other State. In becoming an associate in the Charleston firm, he was, in a sense, returning home. He was taking advantage of the trial experience that he had obtained while serving in the Judge Advocate General's office of the Navy to enter the practice of law in his home State. We recognize that petitioner might have been willing during the first 7 months of 1980 to leave the Charleston firm if he had received a better job offer. Many employees are always on the lookout for better jobs and will accept better jobs when they become available. We are convinced, however, that both petitioner and his firm expected him to stay with the firm for an indefinite or an indeterminate period. That is sufficient to make his abode in the Charleston area his home within the meaning of section 162(a)(2). Petitioner emphasizes that he had duplicative expenses of maintaining the Richmond home and the expenses of living in Charleston. But this duplication was not due to the exigencies of petitioner's work in Charleston. *189 It was due to Mrs. Taylor's retention of her job with the Henrico County school system near Richmond while petitioner worked in Charleston. The choices by Mrs. Taylor to retain her Henrico County job and by petitioner to accept work in Charleston does not justify allowance of a deduction for his traveling and living expenses. See Hammond v. Commissioner,20 T.C. 285, 287 (1953), affd. 213 F.2d 43 (5th Cir. 1954). We hold that petitioner was not away from his home within the meaning of section 162(a)(2) and is not, therefore, entitled to the disputed deduction. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. Respondent does not here contend that petitioner did not incur expenses in the amount claimed on the joint return. Further, the petition does not allege that certain other adjustments made in the notice of deficiency were erroneous.↩
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩