WILLIAM G. DICKIE, JR. AND JENNIFER K. DICKIE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; WILLIAM G. DICKIE, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dickie v. Commissioner
Docket Nos. 2970-85, 2971-85.
United States Tax Court
T.C. Memo 1986-442; 1986 Tax Ct. Memo LEXIS 172; 52 T.C.M. (CCH) 493; T.C.M. (RIA) 86442; September 15, 1986. *172 Held: Petitioner did not have a "home" from which he was away within the meaning of sec. 162(a)(2), I.R.C. 1954, during 1980 and 1981 while working as a contract engineer. John D. Milton, Jr., for the petitioners. Lynn C. Washington, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Docket No.
Year
Amount
2970-85
1981
$5,663
2971-85
1980
$4,417
*173 The issue presented for decision is whether personal living expenses incurred by petitioner William G. Dickie, Jr., during 1980 and 1981 at places away from Jacksonville, Florida, are deductible under section 162(a)(2)[1] as traveling expenses while away from home in the pursuit of a trade or business. Petitioners make no argument on the includibility in their gross income of reimbursement payments made to petitioner William G. Dickie, Jr., to defray certain living expenses during 1980 and 1981. We treat the issue as abandoned. FINDINGS OF FACT At the time the petitions in these consolidated cases were filed, petitioners resided in Indianapolis, Indiana. Petitioner William G. Dickie, Jr., filed an individual Federal income tax return for 1980. He and petitioner Jennifer K. Dickie were married on September 5, 1981, and they filed a joint Federal income tax return for 1981. Both income tax returns were filed with the Internal Revenue Service Center, Atlanta, Georgia. The issues here presented are attributable to the activities of William G. Dickie, Jr., and for the *174 sake of convenience he will be referred to as petitioner. Petitioner was reared in Jacksonville, Florida. Following his parents' divorce in 1965, he lived with his father in that City. He graduated from high school in Jacksonville in May 1969 and from Auburn University, located in Auburn, Alabama, with a degree in mechanical engineering, in March 1975. While pursuing studies leading to his degree, he participated in a cooperative study and work program, attending the University and working for Pratt and Whitney Aircraft (Pratt and Whitney) in West Palm Beach, Florida, alternate calendar quarters from June 1970 through March 1974. From March to June 1975, petitioner attended graduate school at Auburn University, worked as a graduate research assistant, and lived in Auburn, Alabama. From June 1975 to March 1976, petitioner worked full time for Gee & Jensen Engineers, Architects and Planners, and lived in West Palm Beach. In March 1976, he returned to the employ of Pratt and Whitney as a full-time design engineer and continued in that employment until June 1978, living in West Palm Beach. In June 1978, petitioner decided to investigate seeking employment as a contract engineer. *175 He contacted Belcan Corporation (Belcan), a corporation which specializes in obtaining employment for contract engineers, to discuss the possibility of getting contract engineer assignments. A "contract engineer" is one who is employed by a contract service firm, such as Belcan, which provides engineering services for client companies. A contract engineer is usually paid at a higher hourly rate than regularly employed engineers and his assignments may be at locations anywhere in the country. The average length of a contract engineer's assignments during the relevant period was 8 to 12 months but many such assignments last one to two years or longer. Petitioner decided to become a contract engineer because of the anticipated greater monetary compensation, the prospects of seeing different parts of the country, and the professional challenge of new engineering assignments. Belcan was interested in attempting to obtain employment for petitioner but did not want to talk with him while he was still employed by Pratt and Whitney. In June 1978, petitioner left his employment with Pratt and Whitney in West Palm Beach and returned to Jacksonville where he stayed for almost three months *176 while searching for employment as a contract engineer. No such positions could be found in the Jacksonville area, and in August 1978 he obtained an employment assignment with Belcan for a contract it had with Detroit Diesel Allison (hereinafter Diesel) in Indianapolis, Indiana. Prior to the scheduled reporting date for his Indianapolis assignment, Belcan advised petitioner by letter dated September 6, 1978, concerning the anticipated duration of the assignment at Diesel. The letter advised, in part, that: Detroit Diesel Allison issues a 6 month purchase order to cover the cost of services for stress analysts. I realize you had requested confirmation of an assignment duration of at least 1 year to justify going up there. Detroit Diesel Allison feels that 6 months is the longest period of time that they could commit to at this point, and they caution further that the purchase order could be canceled at any time. In that case they would offer the courtesy of a 1 week notice. In the event that everything works out, there is a possibility of extensions to the purchase order, but will not be known until the end of the original 6 month period. Since we do not pay any expenses for *177 moving, or temporary living expenses, I would suggest that you find temporary quarters in Indianapolis, and continue to maintain your permanent home. * * * Petitioner's employment at Diesel lasted from September 1978 until April 25, 1980, a period of approximately 20 months. His work for Diesel involved the performance of finite element stress analysis of turbojet compressor discs and blades. During this period, he lived in two different rented apartments, in one from September 10, 1978 to March 1, 1979, and in the other from March 1, 1979 to April 25, 1980. For the period from April 25, 1980 through July 14, 1980, petitioner was unemployed and he stayed with his father in Jacksonville. While unemployed, he received unemployment compensation. During May and June 1980, petitioner contacted three potential employers in Jacksonville and 30 to 50 potential employers at other United States locations. In July 1980, petitioner obtained another employment assignment through Belcan for a contract with Williams Research in Walled Lake, Michigan. The underlying contract for which petitioner's services were required related to work on an automotive gas turbine contract. Work on this *178 contract continued through April 1981. Petitioner was then shifted to work on a second Government contract for Williams Research involving cruise missile engines. Petitioner was employed at Williams Research continuously from July 1980 through June 1983, when he obtained a position as a regular engineer (no longer in the contract engineer category) with Diesel in Indianapolis, Indiana. While employed in Walled Lake, petitioner lived in a rented apartment in Wixom, Michigan, from July 17, 1980 to July 30, 1981, and in a rented house from July 30, 1981 to June 1983.As noted above, petitioner and petitioner Jennifer K. Dickie were married on September 5, 1981. During 1980, petitioner had a checking account at the Merchants National Bank and Trust Company in Indianapolis, Indiana. During 1980 and at least part of 1981, he had a checking account at a branch of the Community National Bank of Pontiac, Michigan, located in Walled Lake, Michigan. Petitioner maintained a number of connections with Jacksonville. He had three cars and a boat during 1980 and 1981, and all of them were registered and tagged in Duval County, Florida. His driver's license was issued by the State of Florida, *179 and he voted in the 1980 presidential election by absentee ballot in Florida. During 1980, petitioner visited Jacksonville seven times for a total of approximately 90 to 100 days, including the period of his unemployment. During 1981, he visited Jacksonville six times for a total of approximately 25 days. The majority of these visits were on weekends and holidays. When he visited Jacksonville, petitioner stayed with his father and used the bedroom he occupied as a child while growing up in that City. He left many of his personal belongings at his father's home. In addition, he rented from a neighbor for $65 per month a two-car detached garage where he kept two vehicles and some automotive parts and boxes. The telephone at petitioner's father's home was, beginning sometime in 1981, listed in petitioner's name as well as his father's. Petitioner had no rental or other agreement with his father with respect to the use of his father's home. Prior to August 1980, petitioner made no contributions to his father for the use of his home or to help defray the cost of maintaining it. In August 1980, shortly after the end of the period of his unemployment from April 25, 1980 through *180 July 14, 1980, and following a consultation with the accountant who prepared his 1979 income tax return, petitioner sent his father a check in the amount of $503.04. During 1981, petitioner sent his father checks in the following amounts on the dates shown: Date
Amount
January 29
$ 25.00
March 9
$ 25.00
April 2
$ 25.00
May 14
$ 25.00
June 23
$226.34
August 4
$ 57.00
October 4
$ 50.00
The June 23, 1981, check for $226.34 included $176.34 to reimburse his father for amounts spent on petitioner's boat and the August 4, 1981, check for $57 included $32 to reimburse his father for amounts spent on petitioner's car. Petitioner's father regarded the other amounts of the checks "as a gift of [petitioner] trying to help pay some of the expenses of the house." Petitioner's father was free to and did use the money he received from petitioner for any purpose he chose. Petitioner's income tax returns for 1980 and 1981 show the following amounts of contract engineering income and employee business expense deductions: Year
Engineering Income
Employee Business Expenses
1980
$44,402.00
$ 7,038.00
1981
$51,577.50
$11,937.00
Respondent *181 disallowed the employee business expense deductions. The parties have stipulated: Petitioner concedes that $300 of the employee business expenses claimed for 1980 are [sic] not deductible under any circumstances and $1,198 of the employee business expenses claimed for 1981 is not deductible under any circumstances. Respondent concedes that $2,828 of the employee business expenses disallowed for 1980 are deductible in any event and $711.86 of the employee business expenses disallowed for 1981 are deductible in any event. Accordingly, the only amounts disallowed for 1980 and 1981 remaining at issue in this action are $5,111 of traveling expenses for 1980 and $12,931.14 of traveling expenses for 1981. * * * OPINION Section 162(a)(2)[2] provides that there shall be allowed as a deduction all ordinary and necessary traveling expenses (including amounts expended for meals and lodging) paid or incurred during the taxable year while "away from home" in pursuit of a trade or business. Section 262, [3] on the other hand, states that, except as otherwise provided, no deduction shall be allowed for "personal, living, or family expenses." The issue to be decided is whether petitioner *182 was "away from home," within the meaning of section 162(a)(2), while working during 1980 and 1981 in Indianapolis, Indiana, and Walled Lake, Michigan. The purpose for allowing the section 162(a)(2) deduction for traveling expenses while away from home is to ease the burden which falls upon a taxpayer who, because of the exigencies of his trade or business, must bear the duplicate expense of maintaining a residence and of living on the road. Rosenspan v. United States,438 F.2d 905, 912 (2d Cir. 1971); Bochner v. Commissioner,67 T.C. 824, 828 (1977). *183 Ordinarily, the taxpayer will choose to live near where he works, and the costs of his meals and lodging are nondeductible personal expenses under section 262. Thus, a taxpayer's "home," for purposes of section 162(a)(2), is generally his place of abode at or near his principal place of business. Michel v. Commissioner,629 F.2d 1071, 1073 (5th Cir. 1980), affg. per curiam a Memorandum Opinion of this Court; Curtis v. Commissioner,449 F.2d 225, 227 (5th Cir. 1971), affg. a Memorandum Opinion of this Court; Jones v. Commissioner,444 F.2d 508, 509 (5th Cir. 1971), affg. 54 T.C. 734 (1970). Implicit in these principles is a requirement that the taxpayer must have a "home" to be "away from" in order to qualify his otherwise personal expenses as traveling expenses deductible under section 162(a)(2). An itinerant worker without a permanent home for which he incurs substantial continuing living expenses does not qualify for the section 162(a)(2) deduction while on the road; he does not have the burden of duplicate expenses that section 162(a)(2) is intended to ease. Brandl v. Commissioner,513 F.2d 697, 699 (6th Cir. 1975), *184 affg. a Memorandum Opinion of this Court; James v. United States,308 F.2d 204, 206-207 (9th Cir. 1962); Bochner v. Commissioner,67 T.C. at 828. Petitioner argues that Jacksonville was his section 162(a)(2) tax home while he was working as a contract engineer and that he was away from home while working in Indianapolis and Walled Lake. He argues that his Indianapolis and Walled Lake assignments were temporary in nature and that he did not, therefore, establish a home at those locations. [4] On this ground, he contends that he is entitled to deduct the living expenses that he incurred while working in Indianapolis and Walled Lake during 1980 and 1981. Respondent does not deny that petitioner incurred the disputed expenses but maintains that, within the meaning of section 162(a)(2), petitioner did not have a Jacksonville home from which he was away during those years. *185 We hold for respondent. Upon becoming a contract engineer, petitioner launched his chosen career as, in the words of his counsel, a "perpetual itinerant" worker whose assignments were "forecast to be and always are of a temporary nature." One of the reasons he chose this type of work was the prospect of seeing different parts of the country. The average length of a contract engineer's assignment at that time was 8 to 10 months and, at the end of each such assignment, petitioner expected to seek another similar one. He was unmarried during all of 1980 and most of 1981 and had no obligation to, and did not, maintain a residence at any particular location during 1980 and 1981. Petitioner did not have a "home" to be "away from" within the meaning of section 162(a)(2) and is not, therefore, entitled to deductions for his traveling expenses during those years. Petitioner has not shown that his father's house in Jacksonville was his tax home during 1980 and 1981. Before beginning his career as a contract engineer, petitioner had not lived in Jacksonville for years. As detailed in our findings, from June 1970 to March 1974, he participated in a cooperative work-study program, dividing *186 his time between attending classes at Auburn University and working for Pratt and Whitney Aircraft in West Palm Beach. From June 1975 through June 1978, he worked full-time in West Palm Beach, first with Gee & Jensen Engineers, and then with Pratt & Whitney Aircraft. The evidence does not show that he had any connection whatever with Jacksonville during this period other than the facts that it was the place where he lived as a child and his father still lived there. True, petitioner stayed with his father in Jacksonville for nearly 3 months from June until early September 1978 while awaiting a contract engineer assignment. But he did not expect to work there or make Jacksonville his home. He was looking for work elsewhere. Belcan, the engineering services firm through which he sought a contract engineer assignment, had no customers in the Jacksonville or Northern Florida area. There was, therefore, no prospect that a contract engineer assignment would permit him to live in the Jacksonville area. Although petitioner began his first assignment as a contract engineer in September 1978, the evidence shows that he did not contribute in anyway to the maintenance of his father's *187 home before August 1980. At that time, he sent his father a check for $503.04 and, during 1981, he sent his father approximately $25 per month. Petitioner would have us conclude that these nominal sums were substantial contributions to the maintenance of a Jacksonville residence -- a home -- for himself and his father. We do not agree. Cast in the most favorable light from petitioner's standpoint, the contributions were sums given by a financially successful son to his less successful father with whom he had always maintained a close personal relationship. In fact, however, the evidence suggests that the payments were made for tax reasons. He began making them following his consultation with his accountant on the deductibility of his personal and living expenses while working as a contract engineer. After that consultation, petitioner arranged to have his name listed in the Jacksonville telephone directory and began making the payments to his father.[5] The payment of such nominal sums, moreover, must be compared with the deductions of $7,038 for 1980 and $11,937 for 1981 here in dispute. The ratio of claimed deductions to the gifts to his father was about 14 to one for 1980 *188 and 53 to one for 1981; this is hardly the sort of duplication of substantial home expenses that justifies a section 162(a)(2) deduction. Brandl v. Commissioner,513 F.2d 697, 699 (6th Cir. 1975), affg. a Memorandum Opinion of this Court; James v. United States,308 F.2d 204, 207-208 (9th Cir. 1962); Bochner v. Commissioner,67 T.C. 824, 828 (1977); Scotten v. Commissioner,T.C. Memo. 1966-206, affd. per curiam 391 F.2d 274 (5th Cir. 1968). [6]
*189 Respondent argues alternatively that petitioner's assignments in Indianapolis and Walled Lake were intended to be, and were, for indefinite rather than temporary periods and that petitioner's home was in the vicinity of his employment in those cities. We need not consider that argument. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * * ↩
3. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
4. An exception is made to the general rule that a taxpayer's home is in the vicinity of his place of employment; a taxpayer engaged in temporary employment may be permitted to deduct his duplicative expenses for meals and lodging. Jones v. Commissioner,444 F.2d 508, 510 (5th Cir. 1971), affg. 54 T.C. 734 (1970); Commissioner v. Peurifoy,254 F.2d 483, 486 (4th Cir. 1957), revg. 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958). This exception is grounded on the assumption that it would be unreasonable to expect a taxpayer to move his home to the location of temporary employment. Kroll v. Commissioner,49 T.C. 557, 562↩ (1968).
5. Petitioner offered evidence also to show that he visited his father in Jacksonville several times in 1980 and 1981, that he stayed in the room he occupied as a child, that the room had in it the furniture he used as a child, that he voted in Florida in 1980, that his cars were registered in Florida, and that he had a Florida driver's license. These facts are not controlling. As explained in Scotten v. Commissioner,T.C. Memo. 1966-206, affd. per curiam 391 F.2d 274 (5th Cir. 1968): Surely "home" is not simply where the heart lies. If this were true, it would open the floodgates for the deduction of all kinds of personal living expenses, for many of us have moved from our birthplaces, returned often to visit our relatives and friends, and intend to some day go back "home" to stay. Obviously this is not enough to entitle us to deduct all of our personal living expenses while "away from home." ↩
6. The Court has reached a similar conclusion in a growing list of cases involving contract engineers who have made nominal contributions to their parents or otherwise attempted to show attachments to their hometowns as bases for deducting their personal and living expenses under sec. 162(a)(2). See Spinks v. Commissioner,T.C. Memo. 1985-588; Lichtenberger v. Commissioner,T.C. Memo. 1985-370, affd. without a published opinion 789 F.2d 919 (7th Cir. 1986); Deamer v. Commissioner,T.C. Memo. 1984-63, affd. per curiam 752 F.2d 337 (8th Cir. 1985); Rohr v. Commissioner,T.C. Memo. 1982-117; Kaye v. Commissioner,T.C. Memo. 1974-111↩.