NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 15 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>Petitioner,<br><br>v.<br><br>LUCKY CAB COMPANY,<br><br>Respondent. | No. 18-72416<br><br>NLRB No. 28-CA-023508<br><br>MEMORANDUM* |

On Application to Enforce an Order of the
National Labor Relations Board

Submitted February 11, 2020**
Pasadena, California

Before:  BYBEE, COLLINS, and BRESS, Circuit Judges.

The National Labor Relations Board seeks enforcement of its order

determining the amount of backpay that Lucky Cab Company owes to four

illegally discharged employees.  *See Lucky Cab Co.*, 366 N.L.R.B. No. 56 (2018).

In a previous decision, the Board had found that Lucky Cab committed unfair labor

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes that this case is suitable for decision without
oral argument.  *See* FED. R. APP. P. 34(a)(2)(C).

practices by, *inter alia*, discharging several employees (including the four at issue here) during the period leading up to a representation election. *See Lucky Cab Co.*, 360 N.L.R.B. 271 (2014), *enforced*, 621 F. App'x 9 (D.C. Cir. 2015). That prior Board decision also ordered Lucky Cab to offer reinstatement to the discharged employees (who each declined) and to make the employees "whole for any loss of earnings and other benefits." *Id.* at 278. After an extensive hearing, an administrative law judge ("ALJ") fixed the amount of backpay owed to each employee, and the Board adopted the ALJ's recommended order. We review for abuse of discretion the Board's chosen method of calculating that backpay, and we review the Board's findings of fact for substantial evidence. *Sever v. NLRB*, 231 F.3d 1156, 1164–65 (9th Cir. 2000). We grant the application to enforce.

1.      Once the Board's General Counsel establishes the "gross amount of backpay due a claimant," the burden is on the employer to "establish facts that would reduce that amount," such as interim earnings that the employee obtained from alternative employment during the time period between the wrongful discharge and the offer of reinstatement. *Kawasaki Motors Mfg. Corp. v. NLRB*, 850 F.2d 524, 527 (9th Cir. 1988). Here, after their discharge, three of the employees—Elias Demeke, Edale Hailu, and Mesfin Hambamo—ultimately found work as independent contractors in the long-haul trucking industry. When filing their federal income taxes, these three employees deducted a portion of the cost of

2

meals while traveling as a business expense, using standard *per diem* rates as allowed under the Internal Revenue Code. *See* I.R.C. §§ 162(a)(2), 274(d), and 274(n)(3). In calculating these three employees' interim earnings, the General Counsel subtracted these claimed meal-expense deductions from the employees' gross earnings from trucking, and the ALJ accepted these calculations. *See Lucky Cab*, 366 N.L.R.B. No. 56, at 9. Lucky Cab argues that, because the employees had not been given free meals or allowed to deduct meal expenses while working for Lucky Cab, their interim earnings calculations should likewise disregard such expenses. Lucky Cab contends that, as a result of these deductions, the Board's calculation of these employees' interim earnings was too low, resulting in a backpay award that was too high. We disagree.

Lucky Cab wrongly claims that the allowance of such deductions from interim earnings is inconsistent with *Cimpi Transp. Co.*, 266 N.L.R.B. 1054 (1983). In *Cimpi*, an illegally discharged trucker took a new job that was "substantially the same" as his old one, and both the new trucking company and the prior employer did not reimburse meal and lodging expenses while employees were on the road. *Id.* at 1055. The Board disallowed the deduction from interim earnings, concluding that only such expenses "which were unique to that [new] employment *vis-à-vis* employment with [the former employer] should be set off" from the employee's interim earnings. *Id*. *Cimpi*, however, involved a comparison

3

between two substantially identical trucking positions, whereas these employees' new trucking work differed in relevant respects from their prior taxicab work. While Lucky Cab did not reimburse meal expenses for these three employees, their subsequent trucking work was performed as independent contractors who engaged in more extensive travel than they had as employees of Lucky Cab. The line that the Board drew between these two distinct situations parallels one drawn in the Internal Revenue Code, *cf. James v. United States*, 308 F.2d 204, 206 (9th Cir. 1962) (limited deduction for meal expenses while away from home on business reflects a practical compromise based on premise that such expenses may be higher than one would pay if not traveling), and we cannot say that the Board abused its discretion or otherwise erred in drawing that distinction. *See Sever*, 231 F.3d at 1167 (Board's goal "must be to do its best to restore the status quo ante by reconstructing the circumstances that would have existed but for the labor abuses").

2. Lucky Cab argues that, even if these deductions from interim earnings were generally allowable, Demeke deducted more for meal expenses on his 2013 tax return than was proper under the Internal Revenue Code, and the Board's reliance on those faulty numbers led it to underestimate Demeke's interim earnings for 2013. Specifically, Lucky Cab argues that Demeke deducted more than nine months of meal expenses in 2013 even though his testimony established that he

4

drove a truck only through April or May of that year. Even assuming that Demeke's deduction was wrong, we lack jurisdiction to consider this issue because Lucky Cab failed to raise it before the Board. *See* 29 U.S.C. § 160(e); *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665 (1982).

3.     Finally, Lucky Cab argues that the Board erred in awarding any backpay to the fourth employee, Almethay Geberselasa. According to Lucky Cab, Geberselasa's failure to apply for any cab-driving jobs after her discharge demonstrated that she had failed to conduct a reasonable search for alternative employment and thereby had failed to mitigate her damages. The Board did not err in rejecting this contention.

Although "[a]n employer may properly have its backpay liability reduced by a 'clearly unjustifiable refusal to take desirable new employment' on the part of the employee," *Canova v. NLRB*, 708 F.2d 1498, 1506 (9th Cir. 1983) (citation omitted), "a wrongfully discharged employee is expected to seek only new employment that is *substantially equivalent* to the position lost" and "is not required to seek or retain a job more onerous than the job from which he or she was discharged," *Kawasaki Motors*, 850 F.2d at 528 (emphasis added). Here, substantial evidence supports the Board's determination that Lucky Cab failed to carry its burden to establish that "substantially equivalent cab driver jobs with other Las Vegas-area companies were actually available to Geberselasa during the

5

relevant period." *Lucky Cab*, 366 N.L.R.B. No. 56, at 3. Although two competing local cab companies were offering jobs during the relevant time period, the ALJ found that these jobs had significant disadvantages as compared to Geberselasa's prior position. *Id*. at 4. In particular, these low-seniority positions lacked a regular shift, paid "substantially less money per week," and did not provide medical or vacation benefits until completion of six months or more of service. *Id*. The Board properly concluded that these available positions were not "substantially equivalent" to Geberselasa's prior employment at Lucky Cab. *See NLRB v. Oregon Steel Mills, Inc.*, 47 F.3d 1536, 1539 (9th Cir. 1995) (whether two positions are "'substantially equivalent'" turns on several factors, "'including rate of pay, hours, working conditions, location of the work, kind of work, and seniority rights'" (citation omitted)).

     **ENFORCED.**