RICHARD A. SEMOCK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Semock v. Commissioner
Docket No. 23438-91
United States Tax Court
T.C. Memo 1994-382; 1994 Tax Ct. Memo LEXIS 387; 68 T.C.M. (CCH) 378; 94-2 U.S. Tax Cas. (CCH) P47,944; August 15, 1994, Filed *387 Decision will be entered under Rule 155. Richard A. Semock, pro se. For respondent: Howard P. Levine. CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1985
$ 11,708
--
$ 585
[1]
1986
9,711
--
--
--
1987
7,289
$ 1,677
--
--
1988
3,859
100
322
--
Additions to Tax
Sec.
Sec.
Sec.
Year
6653(a)(1)(A) 6653(a)(1)(B) 6661
1985
--
--
$ 2,927
1986
$ 486
[2]
2,428
1987
364
[3]
1,822
1988
--
--
--
After concessions by the parties, the issues for decision are: (1) Whether Richard A. Semock (petitioner) is entitled to deductions under section 162(a) for expenses incurred while "away from home". We hold that he is. (2) Whether petitioner is liable for additions to tax pursuant to section 6651(a)(1) for failing to file timely his 1987 and 1988 Federal income tax returns. *388 We hold that he is. (3) Whether petitioner is liable for additions to tax pursuant to section 6653(a) for negligence and intentional disregard of the rules or regulations. We hold that he is. (4) Whether petitioner is liable for additions to tax pursuant to section 6661(a) for substantial understatement of income tax. We hold that he is. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. We incorporate by reference the stipulation of facts and attached exhibits. Petitioner resided in Cape Canaveral, Florida, at the time he filed his petition. Petitioner is an engineer with a bachelor of science degree in math and computer science from California State University and a bachelor of science degree in electronics technology from Capitol Engineering Institute. After graduating from California State University, petitioner was hired by Rockwell Space Operations (Rockwell) in Downey, California. At Rockwell, petitioner worked on the space shuttle project, *389 providing hardware and software systems expertise for development and testing of a shuttle simulator. After 7 months, the project was shipped to the Kennedy Space Center in Cape Canaveral, Florida. Wanting to continue his work with the space shuttle program, petitioner transferred to Cape Canaveral. Petitioner moved to Cape Canaveral in September 1982, and obtained employment with McDonnell Douglas, which then was using the system on which petitioner had worked at Rockwell. Upon moving to Cape Canaveral, petitioner rented a one-bedroom apartment. His rent initially was $ 250 per month; later it was raised to $ 275 per month. Utilities for the apartment averaged approximately $ 50 to $ 60 per month. Petitioner's employment with McDonnell Douglas was terminated in July 1983. Petitioner looked for permanent employment with the space shuttle program, but after a few months he decided to seek employment as a contract engineer. A contract engineer is an engineer who agrees to take temporary employment at an agreed-upon pay rate for an estimated period of time. As a contract engineer, petitioner sought employment both as a self-employed independent consultant and as an employee *390 of technical services firms. Petitioner decided to remain in the Cape Canaveral area because he believed that there were many firms in that area that might need his expertise. In addition, he felt that it was necessary for his independent consulting business to have a permanent home office where he could always be contacted. During the years in issue, petitioner had temporary contract jobs with ITT Electro-optics in Roanoke, Virginia; Martin Marietta Aerospace in Orlando, Florida; ITT Telecom in Raleigh, North Carolina; Simmonds Precision Instruments in Vergennes, Vermont; Boeing S&TS in Huntsville, Alabama; Northern Telecom in Perimeter Park, North Carolina; and IBM in Research Triangle Park, North Carolina. On average, petitioner's contract jobs lasted 3 to 6 months. Petitioner was paid an hourly wage for contract jobs. In addition to the base hourly wage, petitioner negotiated for and received per diem allowances for each of the jobs he obtained. These allowances were intended to defray the costs of travel, lodging, and meals. Petitioner's accommodations while on contract jobs varied. Petitioner usually stayed in a hotel when he first arrived until he had a sense of how *391 long the job would last. If the job looked like it would last more than a few weeks, he obtained more permanent lodging. Typically, petitioner stayed in hotels that offered accommodations for extended stays or rented an apartment on a short-term lease. He did not sublease his apartment in Cape Canaveral while away on contract jobs. There often were long periods between contracts when petitioner was unemployed. Petitioner was unemployed for approximately 6 months in 1985, for approximately 4 months in 1986, for approximately 6 months in 1987, and for approximately 5 months in 1988. During these periods of unemployment, petitioner returned to his apartment in Cape Canaveral and sought employment. Petitioner attempted to buy a house in Cape Canaveral during the years in issue, but had trouble securing a mortgage because of the nature of his employment. He succeeded in securing a mortgage in 1992 and bought a house in Cape Canaveral at that time. Petitioner prepared his 1985 income tax return himself, reporting all of his consulting income and deductions on Schedule C. On his 1985 return, petitioner claimed business deductions of $ 29,760. Petitioner's 1986-88 returns were *392 prepared by a paid preparer. On his 1986, 1987, and 1988 returns, petitioner claimed business deductions of $ 31,301, $ 15,697, and $ 654, respectively, on Schedules C. In 1987 and 1988, petitioner claimed reimbursed employee business expenses in the amounts of $ 3,979 and $ 2,310, respectively, on Forms 1040, page 1. In 1988, petitioner also claimed unreimbursed employee expenses of $ 14,293 on Schedule A. On his returns for the years 1985-88, petitioner claimed deductions either for office expenses or for rent on business property attributable to his use of a portion of his Cape Canaveral apartment as an office for his consulting business. In 1987 and 1988, petitioner based these deductions on his estimate that 15 percent of his apartment was used as an office. The record does not explain how the deductions claimed in 1985 and 1986 were calculated. Petitioner concedes that in 1987 he received interest income of $ 197 and dividends totaling $ 959 that he failed to report on his return. At some time in 1988, petitioner provided his records for 1987 to the same accountant who had prepared his 1986 return; however, this accountant never completed petitioner's 1987 return. Petitioner *393 found another accountant who said he would be willing to prepare the 1987 return, but he also failed to do so. Petitioner ultimately found a third accountant, who completed both the 1987 and 1988 returns. Petitioner filed his 1987 income tax return on September 11, 1989, and his 1988 income tax return on October 11, 1989. OPINION "Away From Home" Expenses
The principal issue in this case is whether petitioner was "away from home" while he was working on contract jobs during the years in issue. Petitioner contends that his tax home was Cape Canaveral, Florida; thus, his expenses while on contract jobs are deductible under section 162(a) as expenses while "away from home". Section 162(a)(2) allows deductions for "traveling expenses * * * while away from home in the pursuit of a trade or business". Under section 162(a)(2), "traveling expenses" include amounts expended for meals and lodging other than amounts that are lavish or extravagant under the circumstances. To qualify for this deduction, three conditions must be met: (1) The expenses must be ordinary and necessary; (2) the expenses must have been incurred while the taxpayer is "away from home"; and (3) the taxpayer *394 must have incurred the expenses in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). As a general rule, a taxpayer's principal place of business constitutes his "tax home", even though the personal residence of the taxpayer is in another city or is not in the same vicinity as the place of employment. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). An exception to this rule exists where the taxpayer's employment in another vicinity is temporary as opposed to indefinite in duration. Peurifoy v. Commissioner, 358 U.S. 59 (1958); Horton v. Commissioner, 86 T.C. 589, 593 (1986). In such situations, we have found that it is not reasonable to expect a taxpayer to move his home simply to be near temporary employment. Tucker v. Commissioner, 55 T.C. 783, 786 (1971). Respondent does not contest that petitioner's employment during the years in issue was temporary. Rather, respondent argues that petitioner had no tax *395 home from which he could be away. In order to deduct expenses at a temporary work site, a taxpayer must have a tax home away from his work site. Scotten v. Commissioner, 391 F.2d 274 (5th Cir. 1968), affg. T.C. Memo. 1966-206; Bochner v. Commissioner, 67 T.C. 824, 828 (1977). If a taxpayer has no principal place of employment, he is an itinerant for purposes of section 162(a)(2). Hicks v. Commissioner, 47 T.C. 71 (1966). Some cases have recognized that a taxpayer who works at numerous temporary jobs may be away from home for purposes of deducting his expenses at the places he is temporarily employed, if for business reasons he maintains a home where he lives when not working at one of his temporary jobs. See Burns v. Gray, 287 F.2d 698 (6th Cir. 1961); Weidekamp v. Commissioner, 29 T.C. 16 (1957). However, an itinerant worker with no permanent home for which he incurs substantial continuing living expenses typically has been held not to qualify for the section 162(a)(2) deduction for expenses incurred *396 at his temporary work sites. Brandl v. Commissioner, 513 F.2d 697, 699 (6th Cir. 1975), affg. T.C. Memo. 1974-160; James v. United States, 308 F.2d 204, 206-207 (9th Cir. 1962). Thus, an itinerant taxpayer may not deduct the cost of his traveling expenses because he travels with his home, not away from it. While the subjective intent of the taxpayer is to be considered in determining whether he has a tax home, for purposes of section 162(a)(2), we have held that objective financial criteria bear a closer relationship to the underlying purpose of the deduction because the section is intended to mitigate the burden of a taxpayer who, because of travel requirements of his trade or business, must maintain two places of abode and, therefore, incur additional living expense. Brandl v. Commissioner, supra; Kroll v. Commissioner, supra.
Based on this record, we find that petitioner maintained a tax home in Cape Canaveral. Petitioner maintained an apartment for which he paid rent of $ 250, and later $ 275, per month, as well as *397 utilities. He did not attempt to defray these expenses by subleasing the apartment when he was away. While petitioner deducted as an office expense a percentage of the costs of maintaining his apartment, he bore the majority of the costs associated with maintaining the apartment. We find this case to be distinguishable from Bochner v. Commissioner, 67 T.C. 824 (1977). In Bochner, the taxpayer was an engineer who worked for a company in Glendora, California, from 1966 until he was laid off in early 1970. The taxpayer had lived in Glendora since 1957. In mid-January 1971, the taxpayer obtained temporary employment in Richland, Washington. He was in Richland for about 4 months and then obtained temporary employment in Boston, Massachusetts. His assignment in Boston lasted for approximately 4 months, but he remained there another 2 months. After that 6-month period, the taxpayer returned to Richland for a 2-month temporary job. The taxpayer retained his apartment in Glendora throughout this period, hoping ultimately to return to the area. At the completion of the temporary job in Richland, he obtained a permanent position in that area; he *398 then relinquished his Glendora apartment. In Bochner, we stated that although we were not entirely free from doubt, it was reasonable to conclude that Glendora ceased to be the taxpayer's tax home in 1971: Focusing on the objective evidence, petitioner's contacts with Glendora can be characterized as minimal. He ceased to be present in that city after mid-January. He had no business connection with Glendora. In light of the large number of layoffs, his prospects for future employment in that area lacked promise. He had no family there. His sole connection with the area was his apartment which he retained because he desired to return to Glendora. * * * [Bochner v. Commissioner, 67 T.C. at 828.]
While petitioner shares certain similarities with the taxpayer in Bochner, we find the instant case presents several critical differences. It was necessary for petitioner to maintain contact with his client base of technical services firms and to have a home office for his independent consulting business. Petitioner testified that, in his experience, having a permanent address and telephone number were essential for obtaining consulting *399 jobs. There is also no evidence suggesting that petitioner's prospects for future employment in Cape Canaveral were hopeless. Finally, we attach substantial weight to the fact that petitioner did not move from job to job without returning home, as did the taxpayer in Bochner. Rather, during all of the years in issue, petitioner was unemployed for extended periods of time. During these gaps in his employment, he returned to his home and diligently sought employment in the Cape Canaveral area. Accordingly, based on the facts in this record, we find that petitioner's apartment in Cape Canaveral was his tax home in 1985-88. Respondent has not challenged petitioner's substantiation of the amounts claimed on his returns; thus, petitioner is entitled to deductions for expenses incurred while away from home as claimed on his Schedules A and C. In 1987 and 1988, petitioner claimed $ 3,979 and $ 2,310, respectively, as reimbursed employee business expenses. Respondent determined that these deductions should be disallowed as petitioner received per diem allowances in the jobs he held during 1987 and 1988, and these allowances were not included in petitioner's income. Petitioner *400 acknowledges that he did not report the per diem allowances as income, but contends that the allowances were insufficient to cover his living expenses. If petitioner incurred business expenses in 1987 and 1988 that exceeded the reimbursements he received, it was necessary for him to report the reimbursements and related expenses in order to be able to deduct the unreimbursed expenses. Sec. 1.274-5T(f)(2)(iii), Temporary Income Tax Regs.; 50 Fed. Reg. 46028 (Nov. 6, 1985). The record is not clear as to what petitioner's business expenses were, nor as to the total amount he received in per diem allowances during 1987 and 1988. Given the state of the record, we are unable to allow petitioner a deduction for expenses that exceeded the reimbursements he received. Accordingly, respondent's determination with respect to expenses deducted as reimbursed employee business expenses is sustained. Additions to Tax
An addition to tax is imposed by section 6651(a)(1) for failing to file timely a return, unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect. The amount added to tax is a percentage of the "amount *401 required to be shown as tax on such return". Sec. 6651(a)(1). Petitioner filed his 1987 income tax return on September 11, 1989, and his 1988 income tax return on October 11, 1989, both well after the due dates prescribed by section 6072(a). There is no evidence indicating that petitioner applied for extensions of time to file his 1987 and 1988 returns. Petitioner testified that he failed to file timely his returns because two accountants refused to complete the 1987 return and this delayed completion of the 1988 return. While petitioner seems to have had particularly bad luck with accountants, reliance on a third party does not constitute reasonable cause for late filing under section 6651(a)(1). United States v. Boyle, 469 U.S. 241, 247-248 (1985). We find that petitioner is liable for the addition to tax under section 6651(a)(1) for taxable years 1987 and 1988. Respondent also asserted that petitioner's underpayment of income taxes was due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(1) for 1985 and 1988 and section 6653(a)(1)(A) for 1986 and 1987 impose an addition to tax equal to 5 percent of the underpayment *402 if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) for 1985 and section 6653(a)(1)(B) for 1986 and 1987 impose an addition to tax of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is defined as the lack of due care, or the failure to do what a prudent person would do under the circumstances. Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964); Neely v. Commissioner, 85 T.C. 934, 937 (1985). Petitioner bears the burden of establishing that the negligence addition to tax does not apply. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). The remaining underpayments are attributable to deductions claimed for reimbursed employee business expenses in 1987 and 1988 and to income from interest and dividends that petitioner concedes he received but failed to report on his 1987 return. Petitioner's testimony regarding the reimbursed employee business expense deductions indicates *403 that he relied on the opinion of one or more accountants in choosing to claim deductions in that manner. If a taxpayer reasonably relies in good faith upon the advice of a competent and experienced accountant in the preparation of the taxpayer's return, the addition to tax for negligence or intentional disregard of the rules or regulations is not applicable. To show good faith reliance, the taxpayer must demonstrate that the return preparer was supplied with all the necessary information, and the incorrect return was a result of the preparer's mistakes. Pessin v. Commissioner, 59 T.C. 473, 489 (1972). Petitioner failed to demonstrate that he supplied any return preparers with all the information needed to prepare accurate returns. With regard to the unreported interest and dividend income, petitioner failed to offer any testimony or evidence to meet his burden of proof. We hold that petitioner is liable for additions to tax under section 6653(a), but in reduced amounts based on the underpayments for which petitioner is liable as set forth in this opinion. If there is a substantial understatement of income tax for a taxable year, section 6661(a) *404 imposes an addition to tax equal to 25 percent of the underpayment attributable to that understatement. An understatement exists where the amount of tax shown on the taxpayer's return is less than the amount required to be shown on his or her return. Sec. 6661(b)(1)(A). In the case of individuals, an understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown. Sec. 6661(b)(1)(A). The amount of the understatement is reduced by items with respect to which the taxpayer had substantial authority for his or her position or for which relevant facts affecting the tax treatment were adequately disclosed. Sec. 6661(b)(2)(B). Respondent determined that there was a substantial understatement of income tax for 1985, 1986, and 1987, but not for 1988. As noted above, the remaining underpayments are attributable to deductions claimed for reimbursed employee business expenses in 1987 and 1988 and to income from interest and dividends that petitioner concedes he received but failed to report on his 1987 return. Petitioner has not shown that he had substantial authority for his position or that the facts affecting the tax treatment of these *405 items were adequately disclosed. In addition, petitioner does not claim that respondent should have waived the addition to tax under section 6661(a) pursuant to section 6661(c). Accordingly, if after the Rule 155 computation there is a substantial understatement of petitioner's income tax for 1987 within the meaning of section 6661(b)(1)(A), respondent's determination under section 6661(a) will be sustained in reduced amount based on the underpayment for which petitioner is liable as set forth in this opinion. To reflect the foregoing and the concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on $ 11,708.↩
2. 50 percent of the interest due on $ 9,711.↩
3. 50 percent of the interest due on $ 7,289.↩